[S.F. No. 24695. July 25, 1985.]

CHARLES SALEEBY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

552

COUNSEL

Philip Martin for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Ellen A. Pansky for Respondent.

OPINION

**LUCAS, J.**—In this original proceeding petitioner Charles Saleeby seeks an order requiring the State Bar (bar) to adopt rules governing its exercise of discretion in administering the Client Security Fund (Bus. & Prof. Code, § 6140.5, hereinafter CSF) and to set aside its order granting petitioner less than the full amount of reimbursement which he requested. We will conclude that the procedures followed by the bar are insufficient because they fail to provide a record upon which judicial review may be had and deny due process and that the bar therefore must formulate new rules. We will also conclude that decisions relating to applications for reimbursement from the CSF are reviewable by a writ of mandamus heard in the first instance in the superior court. Finally, as to attorney fees, we will hold that the wholesale prohibition against payment of such fees in CSF matters is impermissible, and that petitioner's attorney is entitled under private attorney general principles to fees in an amount to be hereafter fixed.

THE CLAIM

Petitioner was represented by Robert A. Tarver in an age discrimination action. (Tarver's misconduct in this case formed part of the basis for disciplinary proceedings leading to his disbarment [*Tarver* v. *State Bar* (1984) 37 Cal.3d 122 (207 Cal.Rptr. 302, 688 P.2d 911)].) Their fee agreement contemplated payment of 40 percent of "sums recovered" after trial. Following trial in 1976, petitioner was awarded $31,243.24 in damages and reinstatement to his former position. On November 19, 1976, Tarver was also awarded $20,600 by the court as attorney fees for his services. On December 3, after holding the $31,243.24 check for petitioner's damages for almost one month, Tarver met with petitioner and asked him to endorse the check, claiming that the entire amount was owed to him as fees. Tarver did not inform petitioner of the court's attorney fee award. Petitioner first refused to endorse the check and Tarver then threatened to take it all, asserting he could cash the check without petitioner's endorsement. Finally, petitioner agreed to sign the check when Tarver agreed to give him a check for $8,500. Tarver then took the endorsed draft and used a substantial part of the money to cure a default and prevent the foreclosure sale of his office building which was calendared for that same afternoon.

Petitioner consulted other attorneys about the legality of the division of the award. Tarver thereafter billed petitioner for additional fees of

$24,240.24 based on the value of the future income he projected petitioner would receive following reinstatement to his job. Petitioner reported this conduct to the bar which commenced disciplinary proceedings. Petitioner also applied for reimbursement from the CSF in the sum of $22,743.24, the difference between the total damages awarded in the trial, and the $8,500 which he received. The CSF application originally was consolidated with the disciplinary proceedings. Although petitioner appeared as a witness during those proceedings, he was not given an opportunity independently to present evidence in support of his reimbursement application or to make arguments in favor thereof. The bar's hearing panel filed its findings and conclusions on February 22, 1983, recommending that Tarver be disbarred. As to the CSF application, the panel recommended, without making separate findings, that petitioner be granted reimbursement in the sum of $10,246.[1]

Both the disciplinary proceeding and CSF application were heard before the bar's review department (Rules Proc. of State Bar, rules 450-452, 680) before which the bar examiner unsuccessfully requested separate findings of fact and conclusions of law regarding the CSF claim. The examiner also recommended full reimbursement in the sum requested by petitioner. The review department rendered its decision in the disciplinary matter recommending disbarment, but severed consideration of the CSF application. It adopted the hearing panel's conclusions in the disciplinary matter with certain additions, and concluded that Tarver was "guilty of overreaching in his negotiations with his client in persuading him to take substantially less than the client believed he was entitled to receive by making statements that he was not entitled to receive anything." Observing that "A substantial question has been raised as to the legality of any attorney's fees in addition to the amount awarded by the court," the review department found the bar examiner's authorities supported a conclusion of illegality but "this conclusion is not clearly established by case law, and there is no evidence that [Tarver] was aware that such additional fee might be illegal." Finally, the review department concluded that "The fee collected by [Tarver] was unconscionable."

Petitioner thereafter was separately informed by letter of the bar's "final" decision that his CSF application had been denied on the ground that he had "not suffered a reimbursable loss as defined by the Rules of Procedure of the State Bar." The letter specifically noted that while the "reviewing body" had found the fee taken to be unconscionable, petitioner's loss did

---

[1]Because of the absence of findings, no indication of the basis for this award can be discerned with certainty. However, the amount recommended appears to have been reached by taking 60 percent of the damages award and subtracting the $8,500 received by petitioner from Tarver. As petitioner argues, it does not appear to take into account the award of attorney fees made by the trial court and paid by the defendant directly to Tarver.

not arise from "dishonest conduct by the lawyer as defined by Rule 671C . . . ." After commenting that the review department was divided on the appropriate action, the letter invited petitioner to consider requesting reconsideration.

On September 1, 1983, petitioner accepted the invitation and submitted a written request for reconsideration. He ultimately was notified by letter dated December 27, 1983, that his request had been approved in part and that reimbursement in the sum of $10,246 was being ordered to cover the portion of his loss deemed reimbursable.

Because this represented only a portion of the reimbursement he requested, petitioner through counsel filed a petition for writ of review or mandamus directly in this court. We issued an alternative writ of mandate.

THE CLIENT SECURITY FUND

The concept of a fund established by attorneys to compensate clients injured by the misconduct of members of the legal profession was first translated into practice in New Zealand in 1929. (Sterling, *The Argument for A Clients' Security Fund* (1961) 36 State Bar J. 957, 961.) In 1958, the Vermont and Oregon bars became the first associations in the United States to vote to establish such funds. California, where the propriety of a CSF was the subject of debate, did not join the growing number of states providing such protection until 1971. (See Sterling, *supra,* [arguing that the bar should establish a CSF as a matter of moral principle, as well as to improve public relations]; McKnight, *The Argument Against Clients' Security Fund* (1961) 36 State Bar J. 963 [adoption of a CSF will demean the profession in the public eye and encourage claims].) By the time the bar successfully sought legislation empowering it to create a CSF, it was "a relative latecomer" following in the footsteps of over 30 state and 20 local bar associations. (Outcault & Peterson, *Lawyer Discipline & Professional Standards in California: Progress and Problems* (1973) 24 Hastings L.J. 675, 686.)

In 1971, the Legislature enacted Business and Professions Code section 6140.5 authorizing the creation of the CSF. That provision states that the bar "may establish and administer a Client Security Fund to relieve or mitigate pecuniary losses caused by the dishonest conduct of those active members of the bar. Any payments from the fund shall be discretionary and shall be subject to such regulation and conditions as the board shall prescribe." The Board of Governors of the bar is also authorized to delegate the fund's administration to the existing disciplinary board or any other board or committee which it might create. (*Id.,* subd. (a).) Subdivision (b)

of the section allows the collection of up to $10 from each member of the bar for the purpose of funding the CSF.

The next year, the bar established and promulgated rules for the administration of the CSF. (Resolution by the Bd. of Governors of the State Bar of Cal. Establishing a Client Security Fund (June 17, 1971); see Rules Proc. of State Bar, rules 670-688.) Under the procedures set forth, an applicant must file an application for reimbursement on a form which includes in bold face type a statement that the bar "has no legal responsibility for the acts of individual lawyers. Payments from the [CSF] shall be made in the sole discretion" of the bar. (Rule 672 C.) After an application has been filed, it may be rejected by the review department of the bar disciplinary arm if the responsible staff attorney so recommends and forwards a report to the review department briefly stating the reason for the opinion. (Rule 673 A, B.) The report *may* rely on information outside that supplied in the application. (*Id.*, subd. B.) If a majority of the review department concurs, no further hearing or other proceeding is required and the decision is final. (*Ibid.;* rule 685.)

"In all other cases" the matter is referred (apparently by the staff attorney) to a hearing panel or referee or to the review department. (Rule 673 C.) The reviewer *may* take and hear evidence, administer oaths, and compel the presence of witnesses through the use of a subpoena. (Rule 674.) A hearing panel or referee is entitled to conduct investigations and hold hearings as deemed necessary. (Rule 678 A.) After affording the application such consideration as it finds fit, the panel or referee must transmit "to the appropriate office of the State Bar" its report describing the proceedings, which includes findings of fact, conclusions and recommendations. (*Id.*, subd. B.) Before any payments from the fund are ordered, the lawyer involved must be notified and afforded an opportunity to be heard and present evidence and to file a written statement regarding the report submitted by the hearing panel or referee. (Rules 679, 680.) In contrast, the applicant for reimbursement *may* be advised of the progress of his application but is not entitled to any notice of a particular hearing or to see or respond to recommendations or other reports which may be internally submitted. (See rule 684.) The applicant is only entitled to be advised of the bar's final decision. (*Ibid.*)

In carrying out its duties, the review department is required to "find that a reimbursable loss as defined in these rules has been established and the extent of said loss." (Rule 681 B.) "Reimbursable losses" are defined as those caused by the dishonest conduct of an attorney. (Rule 671 D.) "Dishonest conduct" is defined in the same provision as including "wrongful acts committed by a lawyer in the manner of defalcation or embezzlement

of money; or the wrongful taking or conversion of money, property or other things of value . . . ." (*Id.*, subd. C.)

As to the right to payment, the rules specify repeatedly that "All payments from the fund shall be a matter of grace and not of right and shall be in the sole discretion of the State Bar of California. No client or member of the public shall have any right in the fund as a third party beneficiary or otherwise." (Rule 682; see rule 672 C.) Consistent with the statement on the application form, the rules further recite that the review department is vested with "the sole and final authority to determine whether and to what extent any application for reimbursement shall be granted . . . ." (Rule 681 A.) Finally, for further emphasis, the rules declare that once an application is rejected by the review department at any point, such rejection "is final and no further consideration shall be given by the State Bar to said application or another based upon the same alleged facts." (Rule 685.) We turn first to the issue of the proper forum for review of CSF determinations.

## WHERE MAY REVIEW OF CSF DECISIONS BE HAD?

In 1927, the Legislature adopted the State Bar Act (Bus. & Prof. Code, § 6000 et seq.) establishing "what is known as an 'integrated' bar, i.e., an organization of members of the legal profession of the state with a large measure of self-government, performing such functions as examining applicants for admission, formulating rules of professional conduct, disciplining members for misconduct, preventing unlawful practice of the law, and engaging in study and recommendation of changes in procedural law and improvement of the administration of justice." (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 157, p. 168.) We have described the bar as "a public corporation created . . . as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys." (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 224 [113 Cal.Rptr. 175, 520 P.2d 991].) In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court, which nonetheless retains its inherent judicial authority to disbar or suspend attorneys. (Bus. & Prof. Code, § 6100; *Jacobs* v. *State Bar* (1977) 20 Cal.3d 191, 196 [141 Cal.Rptr. 812, 570 P.2d 1230]; *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 301 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].) In the area of admission to practice, an applicant is admitted only by order of the Supreme Court which, upon certification by the bar's examining committee that the applicant fulfills the admission requirements, "may admit such applicant as an attorney at law in all the courts of this State . . . ." (Bus. & Prof. Code, § 6064.)

Determinations and recommendations of the bar in matters of discipline and admission are directly reviewable in this court. Rule 952 of the

Rules of Court describes the means by which such review may be sought. After designating the methods of seeking review of decisions recommending disbarment, suspension, or setting aside a stay of suspension (subds. (a), (b)), the rule next provides: "A petition to the Supreme Court to review any other action of the Board of Governors of the State Bar, or of any board or committee appointed by it and authorized to make a determination pursuant to the provisions of the State Bar Act, shall be filed within 60 days after written notice of the action . . . ." (Subd. (c).) The "Draftsman's Explanatory Notes" to the rule explain that this language "applies to admissions, readmissions, and reinstatements, and takes care of situations not covered by the old rule, where no certified copy of a decision is filed with the Sup. Ct."

Both parties contend that this provision governs review of CSF determinations. As a matter of policy, the bar also urges that permitting review of CSF decisions in the lower courts would cause confusion and inconsistencies because such determinations are frequently made in connection with a disciplinary decision which would be reviewable only in this court. Moreover, the bar stresses, the standard of review utilized by us in disciplinary matters differs from that which might be utilized in a lower court should review be obtained through use of the writ of mandamus.

Consideration of the method by which the CSF was created, its purpose, and historical principles regarding the appropriateness of direct review in this court lead us to conclude that the provisions for direct review provided in the rules of court do not necessarily extend to CSF determinations. The CSF was enacted at the request of the bar which, "[r]ecognizing that occasionally a lawyer might engage in dishonest conduct in violation of his oath which could result in pecuniary loss to his client or others, and that disciplining the guilty attorney does not alleviate the injury to the person sustaining such a loss, . . . resolved to join thirty-four other states" already maintaining funds to compensate such losses. (Plant, *Annual Report of the Board of Governors* (1971) 46 State Bar J. 578, 581-582; see Smith, *The Client's Security Fund: A Debt of Honor Owed by the Profession* (1958) 44 A.B.A. J. 125.) Thus the bar sought legislative authorization for the CSF in order to create a remedy *in addition to* disciplinary measures and civil actions to reimburse clients for losses caused by the wrongful conduct of attorneys. In so acting, the bar sought to advance the legal profession's role as a "public profession devoted to serving the public" for whom the "spirit of public service" acts as a motivating force. (Resolution by the Bd. of Governors of the State Bar of Cal. Establishing a Client Security Fund (June 17, 1971).)

Because the grant or denial of reimbursement from the CSF does not involve discipline or admission of attorneys and there is no legislative re-

quirement for direct review of such determinations here, we decline to hold that our direct review of such decisions is appropriate as a matter of course. (Compare *Jacobs* v. *State Bar, supra,* 20 Cal.3d 193, 198 [Bus. & Prof. Code, §§ 6049-6051 entitle only the bar to initiate action in superior court to enforce subpoena it has issued].) There is nothing in the allocation of CSF monies that necessarily would invoke our "inherent" powers. Unlike the bar's determinations regarding disciplinary matters and decisions involving admission, the bar's power to grant or deny reimbursement is vested pursuant to powers directly granted by the Legislature. In fact, the difference between the bar's traditional role in assisting this court and its role here is emphasized by the bar's own arguments in this action where it contends that it has virtually limitless discretion not subject to our usual standards of review of its recommendations.[2]

We therefore conclude that rule 952 does not apply in this context because the bar's determination of CSF matters does not involve its "administrative" role in aiding this court in matters of discipline and admissions. In the future, claimants seeking review should proceed by writ of mandamus filed in the superior court.

---

[2]We recognize that the American Bar Association (ABA) in its Model Rules for Clients' Security Funds (Standing Com. on Client's Security Funds, approved by the ABA's House of Delegates on Aug. 12, 1981) takes a somewhat different view of the role of the courts in establishing CSFs. In its comment to rule 1, the ABA observes that "it is the Court which bears the responsibility for establishing qualifications for practice and for seeing that lawyers subject to its jurisdiction adhere to the standards of conduct the Court mandates." It then notes that courts have been found to have "inherent power to establish a client's security fund and require lawyers admitted to practice in the state to contribute to it." The ABA comment finally suggests that "Where the Court has declined to exercise its inherent power to establish a client reimbursement system, it is necessary for a professional organization of lawyers to provide such a system." (*Id.*, com., rule 1.)

In *Hersh* v. *State Bar* (1972) 7 Cal.3d 241 [101 Cal.Rptr. 833, 496 P.2d 1201], we held that the fee increase imposed by the State Bar to fund the CSF was prematurely imposed but otherwise permissible. In the course of that discussion, we relied upon *the legislative authority* granted to the bar to impose fees in determining the propriety of the bar's actions. (See 7 Cal.3d at pp. 243, 245-246.) The ABA approach, in contrast, treats creation of the CSF as within the "inherent power" of the court, and has been echoed by courts in other states. For example, in *In re Member of Bar* (Del. 1969) 257 A.2d 382, the Delaware high court addressed a constitutional challenge to establishment of that state's CSF made on the grounds the court's powers over bar members extended only to discipline for misconduct and requiring payment for the fund was an improper levy of a tax on bar members. It concluded that the stated purpose of the CSF " 'to establish as far as practicable the collective responsibility of the Profession in respect to losses caused to the public . . .' " fell within the court's "inherent power" because it was meant "to insure the Bar's reputation" and maintain its standards. (257 A.2d at pp. 383-384.) Similarly in *Folly Farms I, Inc.* v. *Trustees of Clients' Sec., Etc.* (1976) 278 Md. 297 [363 A.2d 479, 481], the Maryland court described its state's CSF as "peculiarly subject to the supervision of the Court" but in that instance the Legislature had granted to the court directly the authorization to create the CSF.

Each state's bar system is different. Here, as noted, the CSF authorization was solicited from *the Legislature* by the bar itself and the powers related to establishing the fund were vested by statute in the bar rather than in this court and by the Legislature rather than by this court. We, therefore, decline to follow the alternative approach described herein.

MANDAMUS

 Having already issued an alternative writ of mandamus, we turn now to the bar's claims that neither administrative nor traditional mandamus (Code Civ. Proc., §§ 1094.5 and 1085, respectively) will presently lie. The bar asserts that section 1094.5 is inapplicable because that section applies only "Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as a result of a proceeding *in which by law a hearing is required* to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . . ." (Italics added.) Because no hearing is mandated by either Business and Professions Code section 6140.5 or the rules formulated by the bar, the bar contends that administrative mandamus is prima facie inappropriate.[3]

California has consistently differentiated "legislative" and "adjudicatory" actions and the manner in which they may be reviewed. In *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 613 [156 Cal.Rptr. 718, 596 P.2d 1134], we "distinguished 'adjudicatory' matters in which 'the government's action affecting an individual [is] determined by facts peculiar to the individual case' from 'legislative' decisions which involve the adoption of a 'broad, generally applicable rule of conduct on the basis of general public policy.'" (Quoting *San Diego Bldg. Contractors Assn. v. City Council* (1974) 13 Cal.3d 205, 212-213 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973]; see also *Wilson v. Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271 [63 Cal.Rptr. 889] [extended discussion of distinction between adjudicatory and legislative actions]; Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 2.8, p. 17 and (Supp. 1984) pp. 17-18 [defining quasi-legislative acts].)

 Section 1094.5 of the Code of Civil Procedure, the provision for "administrative mandamus," is used to review adjudicatory determinations. This form of mandamus "is not available to review quasi-legislative actions

---

[3]The bar also asserts Business and Professions Code section 6001 is a bar to use of administrative mandamus. In relevant part, that section states "[n]o law of this state restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof, including, but not by way of limitation [various Gov. Code provisions] shall be applicable to the State Bar, unless the Legislature expressly so declares." What is at issue here is not a requirement that the bar follow a specified mode or procedure but rather the method by which the procedures adopted by the bar and the decisions it renders pursuant thereto may be reviewed. The bar's argument, if taken to its ultimate conclusion, would mean that there could be no review of its CSF decisions because *any* review would constitute a prohibited restriction on the bar's exercise of power pursuant to this section. (Compare *Chronicle Pub. Co. v. Superior Court* (1960) 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637] [holding "open meetings" and "public records" laws did not apply to bar proceedings because of § 6001].)

of administrative agencies. [Citation.] [¶] . . . . Quasi-legislative acts are reviewable only by an action for declaratory relief (Code Civ. Proc., § 1060) or for traditional mandamus (*id.*, § 1085)." (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 168-169 [188 Cal.Rptr. 104, 655 P.2d 306]; *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 809 [114 Cal.Rptr. 577, 523 P.2d 617].)

The two avenues to mandamus in fact bear many similarities. ■ As described in *Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 673-674 [170 Cal.Rptr. 484, 620 P.2d 1032]: "Of course, mandamus pursuant to section 1094.5, commonly denominated 'administrative' mandamus, is mandamus still. It is not possessed of a 'separate and distinctive legal personality. It is not a remedy removed from the general law of mandamus or exempted from the latter's established principles, requirements and limitations.' [Citations.] The full panoply of rules applicable to 'ordinary' mandamus applies to 'administrative' mandamus proceedings, except when modified by statute. [Citations.]" In the present action, petitioner's request for relief is not clear regarding the "form" of mandamus relief sought.

■ No hearing is presently required by the statute or the rules. The former grants discretion to the bar to make payments and formulate regulations; the latter reiterate that hearing *may* be granted and evidence *may* be taken at the discretion of the decisionmaker. (See Rules Proc. of State Bar, rules 674, 680.) Petitioner argues that this absence of hearing and lack of notice and statement of reasons renders the rules unconstitutional in general. Such a challenge is one to the "quasi-legislative" actions of the bar in formulating and adopting the particular rules in effect. However, petitioner also challenges the particular application of the rules to him and one could consider this an appropriate subject of administrative mandamus because it constitutes a challenge to the decision in an individual's case.

We conclude that traditional mandamus is the appropriate method of review at this time because of the absence of a clear statutory requirement for hearing or of a record sufficient for section 1094.5 review. Petitioner's claim fundamentally is a challenge to the bar's adoption of the existing rules and thus is a challenge to the bar's quasi-legislative actions. (See *Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d at p. 168.) Traditional mandamus will, of course, not lie to compel a particular method of exercising discretion (see *Women Organized for Employment* v. *Stein* (1980) 114 Cal.App.3d 133, 140 [170 Cal.Rptr. 176]; *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 247 [115 Cal.Rptr. 497, 524 P.2d 1281]; Cal. Civil Writs (Cont.Ed.Bar 1970) § 5.25, p. 79 and (Supp. 1983) p. 40) and the selection of a method to process claims and determine which

claims will be granted are matters clearly within the bar's proper exercise of authority under the statutory mandate. However, mandamus will lie to correct an *abuse* of discretion or the actions of an administrative agency which exceed the agency's legal powers. (See *Clean Air Constituency* v. *Cal. State Air Resources Bd.*, *supra*, 11 Cal.3d at p. 809; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 77, pp. 3853-3854; Cal. Civil Writs, *supra*, § 5.35, pp. 87-88.) Here, the bar asserts that it has complete and limitless discretion, but nevertheless concedes that judicial review is also appropriate.[4]

As we will discuss, if some review is indeed appropriate, then at the minimum there must be a reasonable record upon which review may be based. ■ ■ ■ ■ Since much of the difficulty here flows from the lack of a record which reveals the basis for the bar's determination,[5] the challenge properly lies in the first instance with the method of decision making and reporting promulgated by the bar. ■ ■ ■ ■ We therefore conclude that a writ of mandamus pursuant to Code of Civil Procedure section 1085 should issue.[6]

## PROCEDURAL DUE PROCESS AND THE CSF

■ Petitioner asserts that the bar has erroneously arrogated to itself unbridled and unreviewable discretion in distributing awards from the CSF and, in its regulations and practice, has failed to comport with minimum

---

[4]The confusion under which the bar appears to labor is demonstrated by its concession that some review is appropriate and its simultaneous assertion that its payments are a matter of grace. In other words, the bar can do whatever it wishes, but that decision is in some manner "reviewable." If the bar has complete discretion and that discretion is limitless, what is there for this or any court to review? Moreover, what, if anything, can be reviewed if there is no record upon which to base review?

[5]Note, too, that ordinarily review by administrative mandate is based only on the administrative record. (*Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 808 [165 Cal.Rptr. 908]; Cal. Administrative Mandamus, *supra*, § 13.5, p. 218, and (Supp. 1984) at p. 161.) Here, there is no "administrative record" from which meaningful review could be made.

[6]We do not give much weight to the bar's claim that it is not an administrative agency subject to administrative mandamus. In *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 816 [140 Cal.Rptr. 442, 567 P.2d 1162], we observed that administrative mandamus "is not limited, on its face at least, to governmental as opposed to nongovernmental agencies." As to the scope of both versions of mandamus, we explained that "It has long been clear, of course, that [Code of Civil Procedure] section 1085 mandate is available not only to compel official acts on the part of governmental agencies, *but also* to compel nongovernmental bodies or officers to perform their legal duties . . . . [S]ection 1094.5, by using substantially identical language . . ., was intended to apply to the same spectrum of agencies . . . ." (Pp. 816-817, fns. omitted.) The particular words used to characterize the bar thus are irrelevant to the applicability of mandamus which instead depends on the nature of the underlying activity of the organization against which mandate is sought and the effects of that organization's acts upon the petitioner. (*Ibid.*)

applicable standards of due process. The bar responds that CSF payments are a "matter of grace" and it has sole discretion to make such payments, but that some judicial review is appropriate. Moreover, it asserts that no vested rights were created by the Legislature when it authorized the bar to create a fund to compensate injured clients, further demonstrating the inapplicability of due process requirements.

Business and Professions Code section 6140.5 specifically authorizes the establishment of a fund "to relieve or mitigate pecuniary losses caused by the dishonest conduct of those active members of the bar." Payment is to be "discretionary" and the bar is free to prescribe applicable regulations and conditions for payments. We conclude that the Legislature did not intend the bar's powers to be limitless and that the bar's exercise of discretion is reviewable to assure conformance to the purposes of the fund and to avoid the potential for arbitrary or discriminatory decisions.

Essentially, petitioner is insisting that once he has demonstrated "eligibility," he is entitled to an award from the CSF in the amount that he has requested. However, the bar is statutorily entrusted with full power to prescribe and determine under what circumstances reimbursement will be made from CSF money. The present regulations define "reimbursable losses" (Rules Proc. of State Bar, rule 671), but they reserve to the bar "the sole and final authority to determine whether and to what extent any application for reimbursement shall be granted" (*id.*, rule 681 A). It therefore appears that there is nothing approaching an "entitlement" to any sum, at least until the bar has decided that reimbursement should be made and has set the amount.

The fact that petitioner is not entitled to a specific sum is not, however, dispositive. Although the Legislature granted to the bar discretion to administer the fund, it did not insulate the bar's decisions from review. In *Manjares* v. *Newton* (1966) 64 Cal.2d 365 [49 Cal.Rptr. 805, 411 P.2d 901], a school board argued that because it was granted discretion by the Education Code to decide whether transportation should be supplied to students, its decisions on the subject were "conclusive." Speaking for the court, Justice Mosk succinctly responded: "The board is, in effect, claiming that whenever an administrative body has been granted discretionary powers, the manner in which it exercises that discretion is beyond judicial review. This argument is clearly untenable. That mandate will lie whenever an administrative board has abused its discretion is a rule so well established as to be beyond question." (64 Cal.2d at p. 370.)

The requirements of due process, as has long been reiterated, are not inflexible. (*Civil Service Assn.* v. *City and County of San Francisco* (1978)

22 Cal.3d 552, 560-561 [150 Cal.Rptr. 129, 586 P.2d 162]; see also *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 32-33, 96 S.Ct. 893].) While courts have dispensed with the distinction between "rights" and "privileges" (see *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 262-263 [25 L.Ed.2d 287, 295-296, 90 S.Ct. 1011]), the federal courts have continued to focus on the differences between "expectancies" and "entitlements." Thus, in *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 561, 92 S.Ct. 2701], the high court explained that "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." In analyzing whether protectable interests exist, the Constitution is not the source of such interests. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (*Ibid.;* see also *Perry* v. *Sindermann* (1972) 408 U.S. 593, 602-603 [33 L.Ed.2d 570, 580-581, 92 S.Ct. 2694].)

California has expanded upon the federal analytical base by focusing on the administrative process itself. Thus, in *Civil Service Assn.* v. *City and County of San Francisco, supra,* 22 Cal.3d 552, we held that civil service employees upon whom short suspensions had been imposed for disciplinary reasons were not entitled to full procedural presuspension protection of the kind provided before termination of employment. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) In reaching this result, we observed that "While appellants may not in fact have been deprived of a salary earned but only of the opportunity to earn it, they had the expectancy of earning it free from arbitrary administrative action. [Citation.] This expectancy is entitled to some modicum of due process protection. (*Perry* v. *Sindermann, supra,* 408 U.S. 593, 599-603 [33 L.Ed.2d 570, 578-581].)" (22 Cal.3d at p. 564.) We concluded that those interests would be sufficiently protected by procedures followed during the suspension or reasonably thereafter which "apprise the employee of the proposed action, the reasons therefor, provide for a copy of the charges including materials upon which the action is based, and the right to respond either orally or in writing, to the authority imposing the discipline . . . ." (*Ibid.*)

The next year, we specifically instructed that "courts must evaluate the extent to which procedural protections can be tailored to promote more accurate and reliable administrative decisions in light of the governmental and private interests at stake" rather than relying "on whether or not the state limits administrative control over a statutory benefit or deprivation by

the occurrence of specified conditions; . . ." (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 267 [158 Cal.Rptr. 316, 599 P.2d 622].) After reviewing federal precedent, we held that "the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.]" (*Id.*, at p. 268.)

No firm rule can be established to ascertain what protections are necessary in a particular situation. Rather the relief to be afforded depends upon balancing the various interests involved. ■ Generally, "the dictates of due process" necessitate considering "(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269.) Thus we must look to and weigh the various interests at stake before deciding what procedures are constitutionally required.

■ Following the approach of *Ramirez,* we inquire whether the present procedures adequately assure that the bar, having elected to exercise the discretion conferred upon it by the Legislature, will exercise that discretion in a nonarbitrary, nondiscriminatory fashion. We conclude that in order to comport with due process requirements applicants must be afforded an opportunity to be heard and respond to the bar's determinations and the bar must issue sufficient findings to afford review.

■ The opportunity to be heard is "a fundamental requirement of due process." (*Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 45 [161 Cal.Rptr. 392]; see *Perry* v. *Sindermann, supra,* 408 U.S. at p. 603 [33 L.Ed.2d at p. 580].) However, there is no precise manner of hearing which must be afforded; rather the particular interests at issue must be considered in determining what kind of hearing is appropriate. A formal hearing, with full rights of confrontation and cross-examination is not necessarily required. (See *People* v. *Ramirez, supra,* 25 Cal.3d at p. 275.) What must be afforded is a " 'reasonable' opportunity to be heard. (*Anderson Nat. Bank* v. *Luckett,* 321 U.S. 233, 246 [88 L.Ed. 692, 704, 64 S.Ct. 599, 151 A.L.R. 824]; *Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75, 80 [87 P.2d 848]; *CEEED* v. *California Coastal Zone Conservation Com.* [(1974) 43 Cal.App.3d 306, 329 (118 Cal.Rptr.

315)].)" (*Stanson* v. *San Diego Coast Regional Com.*, *supra*, 101 Cal.App.3d at p. 45.)

█ Viewing the nature of the governmental and private interests at stake here, we conclude that the bar is not required to hold a formal hearing, but is required to give petitioner and other applicants an opportunity to respond to the bar's proposed disposition of the request for reimbursement. As noted in the description of the present rules, an applicant is entitled to present information in support of his claim at the time he makes his request, but he is not entitled to any further information until the bar makes its final decision. While in this case the bar afforded petitioner a "rehearing" of sorts by inviting and then considering a request for reconsideration, the rules in fact state that the bar's decision shall be final "and no further consideration shall be given by the State Bar to said application or another based upon the same facts." (Rules Proc. of State Bar, rule 685.) While the bar may permit an applicant to have a more active role in the proceedings, nothing requires it to do so under the present system.[7] In short, the rules do not give an applicant any right to respond to the bar's or the attorney's assertions.

We do not prescribe the exact form that the hearing may take. The bar may fully utilize the disciplinary proceedings which frequently occur simultaneously with CSF proceedings to satisfy hearing requirements. Alternatively, it may provide a separate procedure for written or oral responses to its actions. (See *Civil Service Assn.* v. *City and County of San Francisco*, *supra*, 22 Cal.3d at p. 564.) The goal it must achieve, however, is to afford applicants a reasonable opportunity to raise objections to the particular action the bar desires to take. (See *Horn* v. *County of Ventura*, *supra*, 24 Cal.3d 605, 619.)

█ As we have described, petitioner does not have a right to an award from the CSF. The bar is free to exercise its discretion and to set any guidelines it sees fit which advance the legislative policy behind the CSF. Nonetheless, an applicant may be entitled to relief " 'if the announced grounds for [the bar's decision have] been patently arbitrary or discriminatory.' " (*People* v. *Ramirez*, *supra*, 25 Cal.3d at p. 269, quoting *Cafeteria Workers* v. *McElroy* (1961) 367 U.S. 886, 898 [6 L.Ed.2d 1230, 1238, 81 S.Ct. 1743].) The existing procedures do not require the bar to "announce grounds" in a manner which would permit judicial review. █ We have previously stressed that "a findings requirement serves to conduce

---

[7]As we have noted, in contrast, the attorney is entitled to notice and an opportunity to be heard and present evidence before a final CSF decision is made. (See *id.*, rules 679, 680 B, C.)

the administrative body to draw legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions. [Citations.]" (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 516 [113 Cal.Rptr. 836, 522 P.2d 12]; 2 Davis, Administrative Law Treatise (1958) § 16.05, p. 444; see *B. & O. R. Co.* v. *Aberdeen & R. R. Co.* (1968) 393 U.S. 87, 92 [21 L.Ed.2d 219, 224, 89 S.Ct. 280].) Requiring findings also assists a reviewing court in following the agency's "mode of analysis" and the parties in deciding whether and on what basis review should be sought. They additionally serve to "persuade the parties that administrative decision-making is careful, reasoned, and equitable." (*Topanga, supra,* at p. 517.) The bar concedes some review is appropriate. Some findings are necessary to make that review meaningful.

Rules of Procedure of the State Bar, rule 687 E, which provides that "[u]pon order of the review department directing payment from the fund, the order, the application for reimbursement, the formal pleadings, transcripts, exhibits, findings, conclusions and recommendations in the client security fund proceeding shall be available for public inspection . . .," implies that a record, "findings, conclusions, and recommendations" exist. On closer inspection, this implication proves misleading. First, absent from the rule is any requirement for documentation if there is no order from the review department directing payment. In addition, the bar has not offered such documentation here. Our review of the Rules of Procedure of the State Bar reveals that the review department, final arbiter of CSF decisions, is apparently *not* required to make findings or enunciate conclusions. The letters to petitioner from the bar announcing its conclusions are completely barren of any information other than conclusory statements that petitioner's loss first was not and then was deemed reimbursable. No other "findings" or record of review department proceedings is provided. ▪▪▪ While the bar is not required to make findings as formal as those required of a court (see *Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 335 [136 Cal.Rptr. 421]; *McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 183 [131 Cal.Rptr. 462]), it must provide information "sufficient to apprise interested parties and the courts of the bases for the administrative action." (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 596 [122 Cal.Rptr. 100]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pp. 515-517.)

The procedures already in existence in disciplinary proceedings may well provide the basis for formulating appropriate hearing and findings mecha-

nisms.[8] The purpose of due process in this context is to assure that the bar acts within its discretion, i.e., in a nondiscriminatory and nonarbitrary manner. (Cf. *Perry* v. *Sindermann, supra,* 408 U.S. at p. 597 [33 L.Ed.2d at p. 577] [government may not deny benefit to person on basis "that infringes his constitutionally protected interests"].) We therefore find it appropriate to order the bar to reformulate its regulations pursuant to its authority under Business and Professions Code section 6140.5 and in light of the discussion above.[9] We believe that the bar, with this guidance, will be in the best position to comply with the announced requirements of due process. It is intimately acquainted with the resources at hand, and its interests essentially are not "adverse" to those of petitioner and other applicants who form the class of persons the CSF is aimed at assisting.

Finally, we decline to decide whether the bar's award to petitioner was improperly decided because we have no basis on which to evaluate the bar's determination. Instead, we remand petitioner's application to the bar for such further consideration as may be appropriate following reformulation of the bar rules. We express no view on the merits of petitioner's claim.

ATTORNEY FEES

■■■■ Petitioner argues that the prohibition set forth in rule 686 of the Rules of Procedure of the State Bar which states "No attorney shall be compensated from any source for prosecuting an application against the fund," should be struck down. He contends, first, the rule improperly denies claimants a right to effective counsel which is contrary to the intent of the CSF that "victim[s] will be made whole." Second, he asserts his counsel should be entitled to fees under the "private attorney general" doctrine. (Code Civ. Proc., § 1021.5.)

As to rule 686 of Rules of Procedure of the State Bar, petitioner argues that an attorney is important to assure vindication of the rights of claimants

---

[8]For example, findings in the disciplinary proceedings may be fashioned to address the issue of whether "reimbursable loss" has occurred. Additional findings may be necessary, however, regarding how the finding of a covered loss was ultimately translated into the actual award.

[9]The approach we have taken is consistent with that taken by the Legislature in establishing another "indemnification" fund to assist crime victims suffering serious pecuniary losses. (See Gov. Code, § 13959 et seq.) The system for awarding such benefits includes provisions for hearings as a matter of course (§§ 13962, subd. (d), 13963), "reasonable notice of a decision" (§ 13969.1, subd. (a)), requests for reconsideration (*id.,* subd. (b)), and an express statement that judicial review may be had by writ of mandate (*id.,* subd. (c)). The difference between that fund and the CSF is that in the former case the Legislature explicitly described the procedure to be followed for determining payment, while in the latter, the procedure was left to the discretion of the bar. The approach to the victims' fund is instructive in that it demonstrates an awareness on the part of the Legislature that administration of such a fund required attention to the dictates of due process.

who otherwise must depend on the bar's examiner to press their claims in the disciplinary proceedings and that "it is manifest in this petition that the State Bar cannot be depended upon to give accurate or complete information to applicants about their rights."[10] He maintains that by denying compensation to counsel, the rules effectively deny any representation because few if any attorneys will work without compensation in this area. Given the goal of the CSF to make victims of dishonest lawyers "whole," petitioner concludes that this goal can only be met by regulating fees rather than denying them completely. Finally, he suggests fees could be awarded from the CSF itself which is presently in healthy financial shape.

The issue of whether a limitation on compensation for attorneys is a denial of due process was recently considered by the United States Supreme Court in the context of 38 United States Code sections 3404 and 3405 which limit fees to attorneys representing veterans pursuing "Service Connected Death and Disability Claims" before the Veterans Administration to the sum of $10 and provide criminal penalties for charging more than that limit. (*Walters* v. *National Association of Radiation Survivors* (1985) — U.S. — [87 L.Ed.2d 220, 105 S.Ct. 3180] revg. *sub nom.*, *National Association of Radiation Survivors* v. *Walters* (N.D.Cal. 1984) 589 F.Supp. 1302.) The high court reversed the district court's determination that the restrictions at issue unconstitutionally denied due process to veterans bringing claims.

Earlier, in *Gendron* v. *Saxbe* (C.D.Cal. 1975) 389 F.Supp. 1303, affirmed per curiam *sub nom.*, *Gendron* v. *Levi* (1975) 423 U.S. 802 [46 L.Ed.2d 23, 96 S.Ct. 9], the United States Supreme Court summarily affirmed the district court's finding that the $10 limitation was not unconstitutional on the ground that a claimant for benefits had no property interest in the benefits. As noted by the district court in *Walters,* such a summary affirmance, while of binding effect, extends only to issues if they were actually decided in the lower court, necessary to that court's decision, presented to the Supreme Court in the jurisdictional statement, and necessarily decided by the Supreme Court in its disposition. (589 F.Supp. at p. 1309; see *Cherry* v. *Steiner* (9th Cir. 1983) 716 F.2d 687, 690.)

The *Gendron* summary affirmance was thereafter relied upon as controlling by the Ninth Circuit in *Demarest* v. *United States* (9th Cir. 1983) 718 F.2d 964, cert. den. (1984) 466 U.S. 950 [80 L.Ed.2d 536, 105 S.Ct. 12]. The circuit court found that the procedural due process challenge raised before it had been previously presented to the Supreme Court in *Gendron,*

---

[10]Petitioner's counsel here was also the bar examiner in the underlying *Tarver* matter. (Petitioner waived any claims of conflict and the bar has not contested counsel's representation here.) This casts a somewhat odd light on this contention.

and the high court's summary affirmance meant it had concluded either that Gendron had no protectible property interest or that he had such an interest but it was not violated by the fee limitation. (*Demarest,* 718 F.2d at p. 967.)

At issue in the Supreme Court's *Walters* opinion was whether the district court properly found that the plaintiffs had demonstrated they were denied due process by operation of the fee limitation as applied. The district court's analysis did not focus on a facial attack on the statutory proscription; rather it considered that issue foreclosed by precedent and instead turned to consideration of the plaintiffs' *factual* contentions. The Supreme Court, in reversing the lower court's finding of a violation, reiterated the flexible nature of "due process" and then scrutinized the various interests at stake and the available protections to ascertain what process was due. The court stressed that "various veterans organizations across the county make available trained service agents, free of charge, to assist claimants in developing and presenting their claims. These service representatives are contemplated by the VA statute, 38 U.S.C. § 3402, and they are recognized as an important part of the administrative scheme." (— U.S. at p. — [87 L.Ed.2d at p. 227].) Next, the court articulated the stated congressional purpose of keeping proceedings informal in order to avoid the need for attorneys whose fees would divert some of the award from the claimant. It accorded this purpose great deference and weight in its analysis. (*Id.,* at p. — [87 L.Ed.2d at p. 233.].) After reviewing the rights and benefits at issue, the court concluded that in view of the interests present and the express congressional intent, the plaintiffs needed to make a strong showing of a probability of error to warrant a holding that the limitation denied them due process. (*Id.,* at p. — [87 L.Ed.2d at p. 236].)

The high court considered the evidence relied on by the district court and found it insufficient to support the factual findings underlying that court's determination. (*Id.,* at pp. —— [87 L.Ed.2d at pp. 237-241].) It therefore concluded that on the facts presented, the lower court had erred in finding that the limitation violated due process for those plaintiffs.

In the present case, the briefing on this complex issue is minimal at best and the factual predicate is inadequate. Petitioner's claims are generalized and he presents no information to assist in deciding whether as applied the limitation on payment of fees here operates in a manner inconsistent with the requirements of procedural due process. In fact, petitioner never asserts that he unsuccessfully attempted to obtain counsel to assist him in pursuing his CSF claim before the bar, or that he sought the assistance of counsel on a voluntary basis. Nor does he offer any statistic generally about the use of attorneys in CSF proceedings, nor allege that he presented his claim that rule 686 denied him due process to the bar in the first instance so that body

could consider it. At most, one can consider his attack on rule 686 of the Rules of Procedure of the State Bar a facial attack.

 It has long been held that limitations may be placed on the amount of fees to which an attorney is entitled when he represents clients, particularly those seeking benefits. (See, e.g., *Yeiser* v. *Dysart* (1925) 267 U.S. 540 [69 L.Ed. 775, 45 S.Ct. 399] [upholding Nebraska statute limiting fees in workers' compensation cases to amounts set by court]; *Coviello* v. *State Bar* (1953) 41 Cal.2d 273, 276-277 [259 P.2d 7] [constituted professional misconduct for attorney to attempt to obtain fees in excess of those awarded by Industrial Accident Com.]; see Lab. Code, § 4906 [workers' compensation]; Prob. Code, § 910 [limiting fees for estate attorneys].) As stated in *Coviello,* the purpose of such limitations "is to protect claimants before the commission from the exaction of excessive fees . . . ." (41 Cal.2d at p. 276.) In 1975, the California Legislature placed limitations on contingency fee contracts in yet another context, namely, in medical malpractice actions. (See Bus. & Prof. Code, § 6146; *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164] [limits constitutionally acceptable at this juncture and in the absence of factual data showing adverse effect on representation available to medical malpractice victims].)

While the authority discussed is of some assistance in our analysis, ultimately it is not definitive and is of only limited assistance because it concerns limitations on or the regulation of attorney fees, rather than an outright bar on such compensation.[11] Petitioner has not, as was done by the nonetheless unsuccessful plaintiffs in *National Association of Radiation Survivors* v. *Walter, supra,* 589 F.Supp. 1302, presented information regarding how this limitation on fees has operated or shown specifically that it has deprived applicants of adequate representation. On the other hand, the bar has failed to show any effective method by which claimants who desire

---

[11]Note that the ABA, in its model rules, advanced the following formulation: "*Except as approved by this Committee,* no lawyer shall charge for or accept compensation for prosecuting a claim on behalf of a claimant." (ABA Model Rules for Clients' Security Funds, *supra,* rule 17, italics added.) In the comment to the rule, the ABA suggested that while claimants should receive assistance of counsel "it would be inconsistent with the benevolent purpose of the fund to charge a claimant a fee for such representation." One difference between rule 686 and the ABA's rule is that the latter apparently contemplates fees to the extent "approved" by the governing committee, while the former has no such qualification. The ABA rule thus involves a "reasonable regulation" of compensation, and is more in line with statutes specifying limitations requiring approval by an adjudicatory body. Moreover, the ABA expressly contemplates assistance of counsel in some manner, something the present CSF scheme does not assure.

representation may obtain it.[12] Thus, we are confronted with a flat prohibition on payment, no guarantee of assistance from any source, and the logical conclusion that no assistance therefore is generally available.

In certain instances an attorney may be barred from appearing on behalf of clients. For example, parties to small claims actions may not be represented by counsel in original small claims court proceedings. (Code Civ. Proc., § 117.4.) However, rule 686 is broader in its limitation because the preclusion of attorneys' participation in the small claims forum does not include barring parties from consulting (and compensating) attorneys with regard to such action. Moreover, while plaintiffs may elect to proceed without counsel by choosing to proceed in small claims court, defendants, who did not originally select such a route, are eventually entitled to seek assistance of counsel should they take an appeal from an adverse judgment and seek trial de novo. (Code Civ. Proc., § 117.10.) In contrast, the bar's proscription extends to any compensation from any source for any prosecution of any application for relief from the CSF. This arguably can be construed as extending even to actions seeking judicial review of original determinations of applications as well as to the actual processing of claims directly before the bar.

■■■■■ We have already determined that the bar must revise the existing rules in order to conform to minimal due process standards. We now conclude that this revision must extend to rule 686. The bar is not necessarily restrained from *reasonably* regulating fees or providing alternate means by which adequate representation will be made available to those seeking compensation from the CSF. However, the bar's assertion that the rule is justified because payments are "a matter of grace and not of right" and CSF proceedings are defined in the bar's own rules as "non-adversary," does not, as the bar would seem to have it, ineluctably lead to the conclusion that it may therefore freely prohibit all compensation to attorneys. The bar's notion of "grace" cannot insulate it from the fact that it is administering a fund for the benefit of wronged clients and its interests may not always be exactly consonant with those of an individual applicant. The bar may determine in nondiscriminatory fashion to whom and to what degree payments shall be made; it may not prevent those seeking relief from assuring that

---

[12]The bar argues that applicants' interests are sufficiently represented under the present system as demonstrated by the fact that bar "employees" inform injured clients about the fund, and the bar examiner handling the underlying disciplinary proceeding may vigorously represent the wronged client's CSF interests, as assertedly did the attorney here. However, the bar points to no formal procedures assuring any, much less adequate and effective, assistance. This, of course, contrasts with the veterans' situation described by the Supreme Court in *Walters*. The federal regulatory scheme contemplates that free assistance will be made available to claimants. (— U.S. at pp. —, — [87 L.Ed.2d at pp. 240-241].)

the bar has adhered to the requirements that it provide proper and fair distribution.

In the best of all possible worlds, it would be preferable if wronged clients seeking recompense from a fund set up to assist them in that search did not ever feel it necessary to hire attorneys to assist them. But, if no alternative method of supplying adequate impartial representation is supplied, and we recognize the possibility of fallibility in even the most benevolent minded, money usually remains the necessary quid pro quo for the layman to obtain assistance. The bar is therefore directed to reconsider its prohibition on the compensation of attorneys and to reformulate its rules to permit attorneys assisting applicants to the fund to be compensated.[13]

We turn now to petitioner's claim that his counsel is entitled to attorney fees pursuant to Code of Civil Procedure section 1021.5. That section states that "a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (See *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317 [193 Cal.Rptr. 900, 667 P.2d 704].)

Petitioner's counsel asserts that he is presently on a contingency fee arrangement with his client pursuant to which he will receive one-third of amounts recovered if (1) recovery is made from the CSF, (2) a rule is established that fees may be recovered despite rule 686 of the Rules of Procedure of the State Bar, and (3) fees cannot be recovered under section 1021.5. In support of his request, he contends that each requirement of section 1021.5 of the Code of Civil Procedure has been met, making an award under that section appropriate.

Petitioner first argues that he has vindicated an important right of significant benefit to all future CSF applicants. In *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200], we considered what an "important right" under the section might entail. After observing that such rights need not be constitutional in origin, we explained that section 1021.5, by the use of the word "impor-

---

[13]The bar is *not,* however, precluded from choosing either reasonable regulation of compensation *or* the establishment of an alternate method of assuring adequate assistance to applicants.

tant" directed "the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." (*Id.*, at p. 935.) The plaintiffs there argued that they had enforced the important public right to subdivisions which conformed to the applicable general plan, while defendants contended that plaintiffs had merely vindicated a "technical" requirement that specific findings be provided pursuant to Code of Civil Procedure section 1094.5. We concluded that because the trial court had "confronted substantial questions as to the consistency of the proposed subdivision and Los Angeles' currently applicable general plan," the trial court on remand therefore should in the first instance decide whether the litigation had indeed enforced an " 'important right affecting the public interest.' " (P. 938.)

The rights vindicated here involve the potential for "arbitrariness" in the bar's CSF decisionmaking. The consequences of our decision and the required alterations in the bar's regulations will have an effect on all subsequent CSF determinations. While applicants may have no right to a specific sum, "the general public or a large class of persons" will benefit to the extent that establishment of a method of administration allowing full and considered participation will assure proper determinations. At issue is the "appearance of justice" as well as the potential for more material and measurable benefits to be gleaned from assuring comprehensive and evenhanded treatment of CSF requests. (See *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 322, and fn. 10; *Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547, 558 [202 Cal.Rptr. 400].) These benefits, both pecuniary and nonpecuniary, will affect all future CSF applicants, a significant number of persons interested in a significant sum of money.[14]

We consider next "the necessity and financial burden of private enforcement" (§ 1021.5). Petitioner here sought to vindicate personal rights and his claim to a particular sum in addition to challenging the general regulatory scheme utilized by the bar. Petitioner's "personal interest" was to some degree involved and it therefore may be appropriate to determine what portion of the fees should be attributed to issues transcending that personal interest and what part should be deemed to arise out of petitioner's individual claim. In *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 942, we confronted just such a question and determined that the attorney fees question had to be remanded to the trial court for full consideration. Such a course is not possible here.

As in *Mack* v. *Younger* (1980) 27 Cal.3d 687, 689 [165 Cal.Rptr. 876, 612 P.2d 966], "Because the underlying petition was a petition for original

---

[14]In 1983, a total of 247 claims were filed. In 1984, a total of $841,345 was paid to fund applicants.

writ in this court rather than an appeal . . . we [are] unable to follow our practice of remanding such motions to the court in which the trial was held for the purpose of taking evidence on, and fixing, the reasonable amount of fees to be awarded." The same problem obtains here. As in that case and *American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 716 [206 Cal.Rptr. 89, 686 P.2d 609], we here determine the substantive issues raised by this proceeding, including entitlement to attorney fees under Code of Civil Procedure section 1021.5, but reserve further jurisdiction for the purpose of setting those fees pending consideration of factual issues relevant to the fixing of that award.

CONCLUSION

Generally, the bar should be left as free as possible to effectuate and fulfill the Legislature's grant of authority in Business and Professions Code section 6140.5. However, that freedom is not unlimited, and in accordance with the views stated herein we hold that individual CSF decisions in the future may be reviewed by mandamus (Code Civ. Proc., § 1094.5) in the superior courts in the first instance because such decisions are not an integral part of this court's regulatory jurisdiction over the bar. We further conclude that the present regulations are deficient in that they do not provide sufficient opportunity for applicants to the CSF to be heard nor do they require findings from which meaningful review may be taken. As to petitioner's requests for attorney fees, we conclude that the bar must reconsider its rule prohibiting the payment of attorney fees from any source for the prosecution of CSF matters and reformulate a rule permitting counsel to receive compensation for their assistance. Moreover, we believe that an award of attorney fees under the private attorney general statute is appropriate in a sum yet to be fixed.

Let a peremptory writ of mandate issue commanding the bar to (1) reformulate the existing rules to conform generally to such procedural requirements as are described herein, (2) afford petitioner a reasonable opportunity to be heard thereunder, and (3) provide sufficient findings upon which review may be based. Jurisdiction is reserved for the purpose of awarding attorney fees as may be hereinafter determined.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.