[Civ. No. 7368. Fifth Dist. May 1, 1984.]

MADERA COMMUNITY HOSPITAL, Plaintiff and Appellant, v. COUNTY OF MADERA et al., Defendants and Respondents.

138

COUNSEL

Stammer, McKnight, Barnum & Bailey and Daniel O. Jamison for Plaintiff and Appellant.

Mark A. Wasser and Michael D. Ott, County Counsel, and Philip M. Jay, Deputy County Counsel, for Defendants and Respondents.

OPINION

HAMLIN, J.—

### THE CASE

Plaintiff Madera Community Hospital (hereinafter Hospital) filed its petition for a writ of mandate, a writ of certiorari and declaratory relief against the County of Madera, the board of supervisors and the individual members of the board (hereinafter collectively County). Hospital filed its petition primarily to compel County to adopt standards for the medical aid and care of the indigent and poor within Madera County as required by sections 17000 and 17001 of the Welfare and Institutions Code. Legally sufficient standards could, in turn, require reimbursement to Hospital in accordance with such standards for the reasonable value of hospital and medical care previously provided by Hospital to indigent residents of Madera County.

The trial court denied the petition for writ of certiorari based on its determination that the acts complained of were legislative and not judicial acts, and therefore a writ of certiorari was not an available remedy. It denied mandamus and declaratory relief for three reasons: (1) Hospital lacked standing to bring a petition for a writ of mandate in that Hospital's purpose in bringing the action was to recover money and thus it was not beneficially interested within the meaning of Code of Civil Procedure section 1086; (2) Hospital could not seek monetary relief because it had failed to file a claim as required by Government Code section 900 et seq.; and (3) County had no responsibility for so-called "excess Hill-Burton" patients. (See 42 C.F.R. §§ 124.603(b)(1) and (2), 124.506 (1982).) Hospital appeals.

### THE FACTS

The facts are not in dispute. They are set forth in the parties' written stipulation regarding uncontested facts filed before the hearing and in a further stipulation made in open court.

Since May 26, 1976, Hospital has been a nonprofit California corporation licensed as a health facility. It has operated in the County of Madera and is that county's largest and most fully equipped acute care general hospital

providing emergency outpatient, inpatient and nonemergency hospital and medical care to all members of the public. Among the persons obtaining medical care from Hospital are indigent persons and those described as the "medically dependent poor," persons who have no independent means of paying for the services which they receive.

Prior to 1971 County met its duty to provide medical aid and care for its indigent residents by the maintenance of a county hospital. Since that hospital was closed in 1971, County has either contracted for hospital services or left it to Hospital to provide them.

In 1971 County adopted ordinance No. 353, which purported to define medically indigent persons entitled to financial assistance from County. Sections 3 and 4 of that ordinance, since codified into sections 7.04.010 and 7.04.020-7.04.040 of the Madera County Code, are set forth below:

"*Section 3.* The medically indigent shall be provided medical care by the Madera Community Hospital and such patients shall be processed by the Madera County Welfare Department for financial assistance by and through the Federal and State programs, including Medi-Cal. Only the medically indigent meeting the qualifications and standard of the Federal, State and Medi-Cal programs shall be entitled to financial assistance from the County of Madera through said programs except as hereinafter provided.

"*Section 4.* Each medically indigent patient shall make application for financial assistance under the Federal or State programs, including Medi-Cal; provided that it is the duty of the Provider to encourage patients to make application for Medi-Cal financial assistance and the County has no liability or responsibility for any patient who does not make any such application, or who does not pursue the application in connection with any Medi-Cal program. It shall be the responsibility of the patient and the Provider to see that applications are made and that all information in connection therewith is submitted to the Madera County Welfare Department. Any patient not meeting all eligibility standards for the Medi-Cal program is a private patient insofar at [sic] the County of Madera is involved, . . ." In 1977, 1979, and 1980, Hospital applied for reimbursement or financial assistance from County. Except for the sum of $100,000 Hospital received under a one-year contract with County for the period from July 1, 1979, to June 30, 1980, Hospital was unsuccessful in its attempts to obtain compensation from County for services rendered to indigent residents.

On October 20, 1980, County adopted resolution No. 80-468, which purports to represent standards adopted for the aid and care of indigent and

dependent poor residents of the County of Madera. This resolution contains no reference whatsoever to medical care and services.

The indigent county residents treated at Hospital fall under two categories. Pursuant to Hill-Burton funding, Hospital is required to treat a certain number of patients annually without charge. (42 C.F.R. § 124.503(a) (1982).) Patients in excess of that number who are treated by Hospital without compensation in any one year may be credited against future years' Hill-Burton obligations with a resultant impact on Hospital's current financial capabilities. The second category of indigent persons for whom Hospital is not compensated is comprised of those who are ineligible for Medi-Cal and Medicare payments or who refuse to apply for these benefits.

## DISCUSSION

I. *Did the trial court err in finding that Hospital lacked standing to seek mandamus, certiorari or declaratory relief?*

■ A. *Can Hospital assert standing as a citizen to compel County to adopt and promulgate regulations pursuant to Welfare and Institutions Code sections 17000 and 17001?*

Procedurally, issuance of a writ of mandate is governed by Code of Civil Procedure section 1084 et seq. Specifically, section 1085 provides that the writ "may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station; . . ." Section 1086 provides that the writ "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." It is this last requirement, that the writ be issued upon the application of a party beneficially interested, that was the basis for the trial court's determination in this case that Hospital lacked standing to seek the writ.

The trial court's tentative decision indicates it placed primary reliance in denying Hospital standing on two cases: (1) *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793 [166 Cal.Rptr. 844, 614 P.2d 276], and (2) *McDonald* v. *Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436 [111 Cal.Rptr. 637].

*McDonald* v. *Stockton Met. Transit Dist., supra,* is factually distinguishable from the instant case, and we believe supports rather than refutes a

finding that Hospital has standing to seek the writ of mandate. The court in *McDonald* initially discussed the relationship between the interests of the parties seeking the writ and the duties sought to be enjoined: "The writ of mandate may issue upon the petition of a 'party beneficially interested' (Code Civ. Proc., § 1086) to compel the performance of 'an act which the law specially enjoins, as a duty resulting from an office, trust or station. . . .' (Code Civ. Proc., § 1085.) The exercise of jurisdiction in mandamus rests to a considerable extent in the wise discretion of the court. [Citation omitted.] In exercising this discretion the courts balance the applicant's need for relief (i.e., his beneficial interest) against the public need for enforcement of the official duty. When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced. [Citations omitted.] When the public need is less pointed, the courts hold the petitioner to a sharper showing of personal need. Decisions of the latter sort declare that the applicant's right to the writ must be 'clear and certain.' [Citations omitted.]" (*McDonald, supra,* 36 Cal.App.3d at p. 440.)

In *McDonald,* users of a public transit bus system sought to compel the transit district to install bus shelters in compliance with contractual provisions of a federal grant which had been awarded to the local agency for improvements in the transit system. In denying their petition for a writ of mandate, the court stated: "The mandamus sought by petitioners would have the practical effect of a decree of specific performance. It would obtrude upon the government's discretionary choice of contractual remedies. The bus users' need for passenger shelters may be conceded. They are but indirect beneficiaries of a grant whose primary obligee, the government, is quite able to protect its own interests. Under the circumstances petitioners have failed to establish the beneficial interest necessary to sustain their application." (*Id.,* at p. 443.)

By analogy in the instant case Hospital's interest in being compensated for the medical services it provides to indigent residents of Madera County may realistically be conceded. Carrying the analogy further, however, the medically indigent—who are the primary obligees of County's duty to promulgate standards in conformance with Welfare and Institutions Code sections 17000 and 17001—are not necessarily able to protect their own interests. Moreover, the primary obligees—that is, the medically indigent of Madera County—have no motivation whatsoever to assert or to protect their interests because, as County correctly points out, their interests are being served by Hospital in providing free services despite County's noncompliance with its statutory duty to adopt appropriate standards. This "Catch-

22" situation will be discussed later in our opinion. At this point it suffices to say that equating the power of the federal government to enforce its contractual rights, on the one hand, with the power, ability or motivation of indigent persons in Madera County to enforce their statutory rights, on the other, is less than a persuasive analogy.

Similarly, we believe the trial court's reliance on *Carsten* v. *Psychology Examining Com., supra,* 27 Cal.3d 793 is misplaced. The limitations of that opinion were pointed out by the Supreme Court in *Green* v. *Obledo* (1981) 29 Cal.3d 126 [172 Cal.Rptr. 206, 624 P.2d 256], a case which was not considered by the trial court. In *Green,* defendants argued that plaintiffs' evidence showed a dispute only in regard to the transportation expense portion of a challenged regulation and thus plaintiffs had no standing to seek mandatory declaratory relief as to the regulation as a whole. In rejecting defendants' argument, the court explained the reason for its decision in *Carsten* and its continued adherence to the public-right/public-duty exception to the requirement of a beneficial interest for a writ of mandate.

"It is true that ordinarily the writ of mandate will be issued only to persons who are 'beneficially interested.' (Code Civ. Proc., § 1086.) Yet in *Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 98 . . ., this court recognized an exception to the general rule ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced" ' (*id.,* at pp. 100-101). The exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right. (*Id.,* at p. 100.) It has often been invoked by California courts. [Citations omitted.]

"Properly read, our recent decision in *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793 . . ., does not hold to the contrary. There, a member of an administrative board filed an action for writ of administrative mandate to compel her own board to comply with a certain statute. We affirmed a judgment of dismissal, holding that the plaintiff lacked standing because she was not a party 'beneficially interested.' We recognized (at p. 797) that 'there are circumstances under which a citizen-taxpayer may compel a governmental instrumentality to comply with its constitutional or statutory duty.' But we found 'persuasive legal and policy reasons why an exception to the statutory requirement of beneficial interest should not be carved out for *a person in this posture.*' (Italics added; *id.,* at p. 798.) Among those reasons, we emphasized (at p. 799) a number of 'policy issues

which militate against permitting disgruntled governmental agency members to seek extraordinary writs from the courts.' And we concluded (at p. 801) that 'a board member is not a citizen-taxpayer for the purpose of having standing to sue the very board on which she sits.'

"As these excerpts make clear, *Carsten* was not intended to sound the death knell of the 'public right/public duty' exception to the requirement of beneficial interest for a writ of mandate. Rather, its ratio decidendi is simply that the policy underlying the exception may be outweighed in a proper case by competing considerations of a more urgent nature—there, the dangers consequent upon allowing an administrative board member to sue her own agency.

"No such considerations are present in the case at bar, and plaintiffs were therefore entitled to claim the exception. There can be no question that the proper calculation of AFDC benefits is a matter of public right [citation omitted], and plaintiffs herein are certainly citizens seeking to procure the enforcement of a public duty. [Citation omitted.]" (*Green* v. *Obledo, supra,* 29 Cal.3d at pp. 144-145.)

Like the petitioners in *Green,* Hospital falls within the exception permitting a citizen to seek by way of mandamus to have the laws executed and the duty in question enforced. The propriety of such a conclusion is reinforced by the views of the court stated in *Union of American Physicians & Dentists* v. *County of Santa Clara* (1983) 149 Cal.App.3d 45 [196 Cal.Rptr. 602]. There, an action was brought by individual doctors and their representative union to compel respondent county to compensate the doctors for the reasonable value of emergency services provided by them to persons allegedly medically indigent within the meaning of Welfare and Institutions Code section 17000. The county had an agreement with a hospital (Wheeler Hospital) in a remote area of the county, at which hospital petitioners were on staff and consequently required periodically to be on call for duty in the emergency room. Petitioners sought compensation on a theory of restitution. Although the court rejected their claim, it went on to state: "[T]he question of physicians' right to reimbursement should not obscure the matter of most substantial concern, the County's unreasonable abandonment of a segment of its indigent population. The trial court, at an early stage in the proceedings, afforded physicians a broad hint that the ultimate validity of the causes of action now before us lay not in seeking to compel monetary compensation under quasi-contract theories, but in seeking, as interested citizens, to compel the County's compliance with Welfare and Institutions Code section 17000. We agree; if a county fails to perform its duty, the remedy is not to impose liability for individual claims, but to require it to

fulfill its obligations to the indigent, who are the class of persons benefited under section 17000. [Citations omitted.] The fact remains that physicians here have sought to compel reimbursement. The question whether a writ of mandate should issue, on the facts presented, to compel the County's compliance with section 17000 is not before us." (*Union of American Physicians & Dentists* v. *County of Santa Clara, supra,* 149 Cal.App.3d at pp. 52-53.)

The need to recognize Hospital's standing to procure the enforcement of a public duty is emphasized by the "Catch-22" situation referred to above. Welfare and Institutions Code sections 17000 and 17001 impose on County a duty not only to provide for indigent residents of the county but to adopt appropriate standards for the medical aid and care of the indigent and dependent poor. The duty of a county to provide hospital and medical services to all indigent county residents is clearly established. (*City of Lomita* v. *County of Los Angeles* (1983) 148 Cal.App.3d 671, 673 [196 Cal.Rptr. 221].) In the instant case, County argued and the trial court accepted that Hospital was not a proper party to compel County's compliance with its mandatory duty to promulgate standards for the aid and care of its indigent poor. Both the trial court and County looked for a member of the indigent poor, who had suffered because of County's noncompliance with its statutory duty, to come forward and seek to compel County to act. However, Hospital is providing the necessary medical services not only pursuant to its stated "moral" obligation to do so but by virtue of a statutory mandate found in section 1317 of the Health and Safety Code. That section provides in relevant part: "Emergency services and care shall be provided to any person requesting such services or care, or for whom such services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when such health facility has appropriate facilities and qualified personnel available to provide such services or care.

". . . . . . . . . . . . . . . . . . . . .

"Emergency services and care shall be rendered without first questioning the patient or any other person as to his ability to pay therefor, provided that the patient or his legally responsible relative or guardian shall execute an agreement to pay therefor or otherwise supply insurance or credit information promptly after the services are rendered. . . ." (See also *Payton* v. *Weaver* (1982) 131 Cal.App.3d 38, 46-47 [182 Cal.Rptr. 225].)

So long as Hospital continues to comply with its moral and legal duty to provide emergency care to persons requesting such care or for whom such

care is necessary, no member of the public who was intended to be benefited by the operation of Welfare and Institutions Code sections 17000 and 17001 will be aggrieved by County's failure to comply with its duty under those code sections. This leaves County in a position to continue to ignore its obligation to provide for the indigent and poor residents of the county. Those indigent and dependent poor will continue to get medical care from Hospital, and Hospital will continue to go unpaid. If Hospital has no standing because its primary interest is financial and the indigent and dependent poor of Madera County have no standing because they have not suffered any detriment, County will remain safe from any challenge for its failure to adopt standards for the care of the poor. Such a result makes no sense and, fortunately, is not warranted under existing statutory and case law. We therefore conclude that the trial court erred in its determination that Hospital lacked standing as a citizen, insofar as Hospital sought only to compel County to comply with the duty imposed upon County by Welfare and Institutions Code sections 17000 and 17001, i.e., to adopt standards for the aid and care of the indigent and dependent poor of Madera County.

 B. *Did Hospital have standing to seek monetary reimbursement for past services rendered by way of an action in mandamus?*

We understand Hospital's position to be that, until such time as County adopts standards for the aid and care of the indigent and dependent poor in Madera County, it has no standing to seek monetary reimbursement for past services by an action in mandamus. This understanding is consistent with Hospital's statement at the hearing in the trial court that "evidence concerning the hospital's financial condition, the amount of its losses, et cetera, is not necessary at this time as to the issues of the hospital's beneficial interest in this lawsuit and its standing to sue and will not be offered at this time."

 Even assuming Hospital's continuing claim for reimbursement, such a claim does not vitiate Hospital's standing as a citizen to compel County to perform its duty.

 Financial interest in compulsion of a ministerial duty is sufficient under certain circumstances to establish standing on the part of those financially interested to seek the writ of mandate. (See, e.g., *C-Y Development Co.* v. *City of Redlands* (1982) 137 Cal.App.3d 926 [187 Cal.Rptr. 370].) However, even though a financial stake in the outcome may confer standing in some circumstances, Hospital in this case has no current entitlement to the money under the standards necessary to obtain reimbursement from a governmental agency. The case of *Union of American Physicians & Dentists*

v. *County of Santa Clara, supra,* 149 Cal.App.3d 45 addressed an identical problem. In rejecting the claim of the physicians for reimbursement from the county, the court stated in part: "The problem is that physicians are invoking these principles to recover from a county, a state subdivision exercising within its boundaries the sovereignty of the state. [Citation omitted.] Their claim must therefore rest on more than principles of restitution; their claim must be specifically authorized by statute. [Citations omitted.] Conversely stated, a county is not liable to pay any claim for services rendered except those whose payment is authorized by law. [Citations omitted.]

"Physicians contend that Welfare and Institutions Code section 17000 authorizes their claims. Obviously, section 17000 does not expressly authorize the payment of compensation for noncontractual emergency relief provided to indigent residents. Section 17000 does impose a mandatory duty (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 676 [94 Cal.Rptr. 279, 483 P.2d 1231]) of the type contemplated by sections 113 and 114 of the Restatement of Restitution. [Citation omitted.] However, the establishment of such duty does not itself constitute the specific authority necessary to maintain a quasi-contract cause of action against a county.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Thus, there is no specific statutory authority under which a county may be compelled to entertain or pay noncontractual claims by private physicians for expenses incurred in providing emergency medical services to indigent residents. As the affidavits indisputably establish that physicians have no claim under contract, either express or implied in fact, we conclude that the trial court properly determined that the County was entitled to judgment as a matter of law." (*Union of American Physicians & Dentists* v. *County of Santa Clara, supra,* 149 Cal.App.3d at pp. 50-52, fns. omitted.)

■ As in *Union of American Physicians & Dentists,* Hospital in this case can make no claim under an existing contract or under any statute or ordinance for reimbursement of the expenses it has incurred in treating the indigent and dependent poor of Madera County. Therefore, we conclude, to the extent Hospital has sought monetary relief by way of its petition for a writ of mandate, the trial court correctly denied that relief. ■ However, as discussed above, Hospital's concurrent financial interest in the outcome of this litigation does not divest it of its citizen standing to seek to compel County to fulfill its duty to adopt standards for the aid and care of the indigent and dependent poor as required by California law.

II. *Was Hospital barred from seeking relief by writ of mandate because it failed to file a claim for reimbursement with County?*

■■■ In addition to rejecting Hospital's claim for lack of standing based upon its determination that Hospital's interest in the instant proceeding was exclusively financial, the trial court also held that Hospital was barred from proceeding because it failed to file a claim as required by Government Code section 900 et seq. Specifically, Government Code section 905 provides in part: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part all claims for money or damages against local public entities except: . . ." The only possible exception applicable to Hospital's claim for money in the instant case is subdivision (e) of Government Code section 905, which provides: "(e) Applications or claims for any form of public assistance under the Welfare and Institutions Code or other provisions of law relating to public assistance programs, and claims for goods, services, provisions or other assistance rendered for or on behalf of any recipient of any form of public assistance."

County argues that the quoted exception is inapplicable to Hospital's claim because Hospital is neither an applicant for public assistance nor seeking to recover for services rendered to recipients of public assistance. Actual recipients of public assistance, i.e., those eligible for Medi-Cal, are already covered under the standards promulgated by County and challenged by Hospital. Hospital's contention that County has failed to adopt standards for the care of the indigent and dependent poor who are not already recipients of some form of public assistance is insufficient to bring Hospital within the exception of Government Code section 905, subdivision (e). We therefore conclude that the trial court was correct insofar as it determined that Hospital could not claim an exemption from the necessary claim procedure. (Gov. Code, § 945.4; *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454-455 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

■■■ Despite the mandatory nature of the claim proceeding, it is equally well settled that it applies only to claims for money or damages and is not applicable to other types of judicial relief. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113 [113 Cal.Rptr. 102, 520 P.2d 726].) Thus, the failure to file a claim does not bar Hospital from seeking the writ of mandate to compel County to comply with the duty imposed on it by Welfare and Institutions Code sections 17000 and 17001. ■■■ However, we conclude the trial court correctly held that Hospital's failure to file a claim was fatal as to any monetary reimbursement sought by Hospital in this action in its

present posture. We are not persuaded to the contrary by Hospital's reliance on *County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576 [159 Cal.Rptr. 1] to establish that compliance with the claim statute should be excused in a mandamus proceeding. There the court excused compliance with the claim statute where the ultimate result was the payment of money to petitioners because the focus of the action was merely to compel performance of a ministerial duty, i.e., to force the state to release funds which were already allocated to the county under the existing legislation. The court did not construe the action as one to recover damages but one merely seeking the ministerial act of releasing the funds. In contrast, in this case Hospital has failed to show any entitlement to reimbursement because of the absence of standards adopted by County which would authorize such payment.

Our conclusion that the trial court erred in concluding that Hospital lacked standing to seek the writ of mandate to compel County to comply with its duty to adopt standards for the aid and care of the indigent and dependent poor of Madera County makes it unnecessary to consider Hospital's remaining contentions on appeal. We do, however, consider it in the interests of judicial economy to determine the issue briefed and argued in the trial court as to the sufficiency of resolution No. 80-468 and ordinance No. 353 to establish the standards for the medical aid and care of the indigent and dependent poor within Madera County which are required by the provisions of Welfare and Institutions Code section 17001.

We recognize, of course, that in most cases reversing a trial court on the narrow and preliminary issue of standing, the reviewing court has no basis on which to review the merits of the underlying action. In the instant case, however, the parties have stipulated to all material facts necessary to such a determination; as no factual issues concerning the adequacy of the standards adopted by County for the medical care of its poor and indigent residents are in dispute, this court can decide the adequacy of such standards as a matter of law.

■ Having acknowledged its duty, pursuant to Welfare and Institutions Code section 17001, to adopt standards for the medical care of the poor, County maintains that ordinance No. 353, codified at sections 7.04.010 and 7.04.020-7.04.040 of the Madera County Code, satisfies this duty. As stated above, resolution No. 80-468 makes no reference at all to medical care and therefore has no significance to this discussion beyond the parties' stipulation that resolution No. 80-468 and ordinance No. 353 "set forth all of the aid and care standards adopted by [County] pursuant to sections 17000 and 17001 of the Welfare and Institutions Code." We disagree. The sole effect

of ordinance No. 353 is acknowledgement of County's participation in the Medi-Cal program. The ordinance specifically provides: "Only the medically indigent meeting the qualifications and standard of the Federal, State and Medi-Cal programs shall be entitled to financial assistance from the County of Madera through said programs except as hereinafter provided. . . . Any patient not meeting all eligibility standards for the Medi-Cal program is a private patient insofar [as] the County of Madera is involved . . . ." Because all funding for the Medi-Cal program comes from either the federal or the state government and is merely administered by the participating counties (with even a portion of the administrative expenses reimbursed by the funding sources), County has denied any financial obligation whatsoever from county funds for the medical care of its indigent and poor residents. As county counsel stated at the trial on this writ: "Health and Safety Code 1317 obligates the hospital to provide service; and I'm not suggesting that that section, that that obligates the hospital to provide service—to the extent that the hospital is not able to recover payment for those services, that's unfortunate.

"It's a cost of doing business. But it's not the County's responsibility. Bad debts that the hospital incurs as a result of persons that are not eligible for Hill-Burton or Medi-Cal are a cost of doing business. They are not the County's responsibility. The hospital has a duty to determine Hill-Burton eligibility promptly.

"I don't believe the hospital should be allowed to treat patients, determine subsequently that those patients were ineligible for Hill-Burton or Medi-Cal and then simply transfer those costs or try to transfer those costs to County."

It is precisely County's responsibility, as a political subdivision of the state, which the Legislature addressed in enacting Welfare and Institutions Code section 17000 et seq. Contrary to County's argument, Hospital is mandated by Health and Safety Code section 1317 to provide emergency treatment without *any* initial inquiry as to the ability of the patient to pay for such treatment. Once the treatment has been provided, the financial cost to Hospital has been incurred; whether the patient is subsequently established to have the private means or private insurance to pay for the care, to be eligible for financial assistance through any federal or state program, including Hill-Burton and Medi-Cal, or to be wholly unable to meet the financial obligation to Hospital does not alter the fact that Hospital has provided the services and incurred the cost.

The obligation of counties to care for their poor and indigent long antedates the federal and state participation in such care through programs such

as Medi-Cal. If the Medi-Cal program were intended to supplant the obligation imposed by Welfare and Institutions Code section 17000 et seq., medical care would presumably have been exempted from those provisions of the Welfare and Institutions Code as no longer necessary. We need not, however, rely upon the failure of the Legislature to exempt medical care from Welfare and Institutions Code section 17000 et seq. We conclude that it otherwise appears the Legislature intended that County bear an obligation to its poor and indigent residents, *to be satisfied from county funds,* notwithstanding federal or state programs which exist concurrently with County's obligation and alleviate, to a greater or lesser extent, County's burden.

Welfare and Institutions Code section 17006 provides in part: "The board of supervisors of every county as a board, or by committee or by such person or society as it may authorize, shall investigate every application for relief *from the funds of the county,* shall supervise by periodic visitation every person receiving such relief, shall devise ways and means for bringing persons unable to maintain themselves to self-support, and shall keep full and complete records of such investigation, supervision, relief, and rehabilitation as shall be prescribed by the department." Although provisions of Welfare and Institutions Code section 17006 concerning confidentiality of the records were altered by the addition of section 17006.5 in 1983 (concerning limited disclosure in those cases in which a felony warrant has been issued for a recipient), no change or amendment to the statute suggests any legislative intent to insulate individual counties from the expenditure of *county funds* in satisfaction of their obligation under Welfare and Institutions Code section 17000.

Moreover, an extensive framework was enacted by the Legislature to enable individual counties to recoup county funds expended on the care of the poor and indigent. This framework includes compulsory transfer of property from the indigent recipient to the county (see, e.g., Welf. & Inst. Code, § 17109); legal action on behalf of the county against any relative of the indigent recipient deemed by the county to have financial ability to pay for his care (see, e.g., Welf. & Inst. Code, § 17300); and legal action on behalf of the county against the indigent recipient personally to reach after-acquired property (see, e.g., Welf. & Inst. Code, § 17403). The efficacy of such provisions to refill the county coffers is irrelevant; the relevance of these provisions is their manifestation of a legislative intent that counties expend county funds to discharge their obligation to the indigent and poor, although the Legislature also provided the counties with the statutory means to seek repayment.

Finally, the independent nature of County's obligation under Welfare and Institutions Code section 17000 and under the Medi-Cal program is high-

lighted in 62 Ops.Cal.Atty.Gen. 70 (1979). Although we do not express any opinion about the conclusion reached by the Attorney General with respect to the authority of counties to provide *nonemergency* medical care under Welfare and Institutions Code section 17000, it is clear from the opinion that *emergency* care, provided pursuant to the mandate of Health and Safety Code section 1317, differs from care provided in a nonemergency setting. In identifying broader authority to provide care under the Medi-Cal program than under Welfare and Institutions Code section 17000, the Attorney General implicitly recognizes that the two programs for relief are independent; participation in the Medi-Cal program does not relieve participating counties from their traditional obligation to poor and indigent residents.

We therefore conclude that Madera County Ordinance No. 353 is inadequate as a matter of law to satisfy the responsibility of County, under Welfare and Institutions Code section 17001, to adopt standards of aid and care for the indigent and medically dependent poor. The decision of the trial court is reversed, and the trial court is directed to issue its writ of mandate, compelling the Board of Supervisors of Madera County to adopt standards for the medical care of indigent and dependent poor residents of County. The trial court is further directed to retain jurisdiction of this action following the issuance of its writ to ascertain the legal adequacy of such standards promulgated by County upon application of Hospital or any resident beneficially interested.

Franson, Acting P. J., and Zenovich, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 11, 1984.