[No. B014555. Second Dist., Div. Five. Mar. 18, 1986.]

CALIFORNIA ASSOCIATION OF HEALTH FACILITIES,
Plaintiff and Respondent, v.
KENNETH W. KIZER, as Director, etc., et al.,
Defendants and Appellants.

COUNSEL

Weissburg & Aronson, Robert J. Gerst, J. Mark Waxman and Robert M. Dawson for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, Anne S. Pressman and Elizabeth Hong, Deputy Attorneys General, for Defendants and Appellants.

OPINION

**HASTINGS, J.**—Defendants/appellants State of California Director of Health Care Services, et al. (Department) appeal the granting of a judgment in favor of plaintiff/respondent California Association of Health Facilities (CAHF)[1] and the issuance of the related peremptory writ of mandate.

---

[1] CAHF is a statewide association consisting of approximately 775 of a total 1100 skilled nursing and intermediate care facilities licensed in the State of California.

In September 1982, the Legislature enacted Welfare and Institutions Code section 14132.25, effective January 1, 1983.[2] As noted in footnote 2 below, this statute required the Department to establish a subacute care program in health facilities by July 1, 1983, and to develop a rate of reimbursement for the subacute care program. Though there is evidence that the Department began the process (Task Force meetings, suggested regulations, etc.), it has not complied with this statutory mandate to date.

On November 1, 1984, CAHF filed a petition for a writ of mandate (Code Civ. Proc., § 1085), arguing that the Department had a clear and present duty to establish a subacute care program, and that CAHF had a clear, present beneficial right to compel the Department to so act. It further asserted that public need was weighty since the patients who would benefit from this care, those who needed constant though not acute care, were currently paying acute care rates.

The Department countered that CAHF's right to compel establishment of this program was tangential, at best; that without a budget appropriation its duty was ambiguous, not clear and present; that its duty to act was contingent on an unlikely budget appropriation; and that to issue a writ would be a useless act as the Legislature showed no sign of appropriating the necessary funds. Declarations from Department employees were submitted describing the initial actions taken by the Department to establish the program.

CAHF replied, reasserting its beneficial interest in the establishment of the program and pointing out to the court that formulation of regulations does not require a budgetary appropriation. In fact, it argued, the Legislature cannot reimburse rates *until* there is a program established.

On April 11, 1985, the court issued the peremptory writ of mandate. The writ stated: "You are hereby commanded immediately upon receipt of this writ to comply with applicable law: 1. By compliance with the mandates of Welfare and Institutions Code section 14132.25 forthwith; and 2. By pro-

---

[2]Welfare and Institutions Code section 14132.25 in pertinent part, provides: "On or before July 1, 1983, the State Department of Health Services shall establish a subacute care program in health facilities in order to more effectively use the limited Medi-Cal dollars available while, at the same time, ensuring needed services for these patients. The subacute care program shall be available to patients in facilities who meet subacute care criteria. Subacute care may be provided by any facility designated by the director as meeting the subacute care criteria, and which has an approved provider participation agreement with the State Department of Health Services. [¶] The State Department of Health Services shall develop a rate for reimbursement for this subacute care program. Reimbursement rates will be determined in accordance with methodology developed by the State Department of Health Services, . . . [¶] However, reimbursement at subacute care rates shall only be implemented when funds are available for this purpose pursuant to the annual Budget Act. . . ."

mulgating on or before May 13, 1985 those regulations necessary for the implementation of a subacute care program pursuant to the mandates of Welfare and Institutions Code section 14132.25. [¶] You are hereby further commanded to make and file a return to this writ on or before May 13, 1985 setting forth what you have done to comply. [¶] Dated: April 11, 1985."[3] The judgment indicates the court also awarded petitioner costs and fees in the sum of $5,074.50.

On appeal, the Department avers that 1) the duty imposed by the statute is discretionary, not ministerial; 2) when the writ issued, there was no then-present duty imposed on the Department since July 1, 1983 had long since passed; 3) a writ should not order a useless act; and 4) the writ, as issued, orders performance of acts beyond the Department's ability and is too broad.

CAHF counters that the statutory language is mandatory and the Department's obligation ministerial, not discretionary; that the Department's "useless act" contention fails and the writ properly was issued. CAHF also seeks sanctions, believing the appeal to be frivolous and taken solely for delay.

## DISCUSSION

■ The resolution of this appeal requires interpretation of the statutory language and is a classic question of law within the sole purview of the courts. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].) ■ The facts are agreed upon, therefore the interpretation of the statute by the lower court does not constrict or otherwise bind us. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

■ The fundamental rule of statutory construction requires us to ascertain and to construe a statute so as to effectuate its purpose. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 132 [142 Cal.Rptr. 325].) We look first to the words of the statute; when they are clear and unambiguous, we give them their obvious meaning. (*Ibid.,* p. 133.) ■ Here the words of the statute, "[T]he State Department of Health *shall establish* . . . ." (italics added), are clear. Moreover, Welfare and Institutions Code section 15, one of the general provisions governing interpretation of specific Welfare and Institutions Code sections, explicitly declares, " 'Shall' is manda-

---

[3] The language of this writ had been proposed by CAHF. The Department's proposed writ differed in that it ordered the agency to prepare and submit to the Office of Administrative Law regulations necessary for implementation.

tory and 'may' is permissive." The express language of this statute and the guidelines of section 15 require a finding that the duty imposed on the Department is mandatory in nature. Had we not had such clear indications of the Legislature's intent, we would have examined the Department's various arguments propounding the permissiveness of "shall" and the discretionary nature of its duty. As it is, we need not. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910 [136 Cal.Rptr. 251, 559 P.2d 606].)

The Department also avers that when the writ issued, the July 1, 1983 deadline had expired; therefore, it had no then-present duty to act. The cases cited in support of this contention all speak of situations where the party in question no longer had the *legal authority* to act because the statutorily granted time to do so had expired. (See *Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 134 [65 Cal.Rptr. 330, 436 P.2d 330].) No such allegation has been made here. If it had been, the Department's own actions would negate an assertion that it believed it had no authority to establish a subacute care program after July 1, 1983. The declarations of its own employees reveal that after the deadline had passed, the Department continued its efforts to that end.[4] Furthermore, we are unwilling to accept this contention because to do so would encourage others to ignore a deadline in order to argue their duty to act had been extinguished.

 The third argument presented by the Department is that the writ is inappropriate because it orders the performance of a useless act. This contention is predicated on the belief that the Department cannot act until the Legislature appropriates the funds to reimburse participants in the subacute care program. It urges that the Legislature has "lost interest" in the program and will never authorize a budget appropriation, causing the Department to expend resources and the health care industry to incur costs which will never be recouped. First, we are presented with no evidence that the Legislature has indeed "lost interest" in a subacute care program. Secondly, the statute appears to envision the following sequence: 1) program implementation by the Department; 2) development of rates of reimbursement by the Department; then 3) appropriation of funds for reimbursement by the Legislature. Completion of the first and second steps by the Department is distinct from and not dependent upon legislative action on the third step. The Legislature cannot implement reimbursement until there is a subacute program and appropriate reimbursement regulations. Thirdly, ". . . financial distress is not a defense to the issuance of a writ." (*May* v. *Board of*

---

[4]The task force to develop revised and more stringent subacute care criteria began meeting in February 1984. A second task force to define an additional category of patient began meeting in October 1984.

*Directors* (1949) 34 Cal.2d 125, 134 [208 P.2d 661].) The Department may not ignore its duty to act because it foresees purported fiscal difficulties on the horizon.

Finally, the Department argues that the writ is overbroad, and that it is not within the Department's ability to comply with its mandates. It seeks modification of the writ to exclude any language which suggests immediacy and to recognize the role of the Office of Administrative Law (OAL). The writ, issued on April 11, 1985, mandated compliance by May 13, 1985. The Department asserts that the application of the extensive statutes which pertain to enactment and promulgation of regulations make it impossible for it to comply. For example, hearings, preenactment publication and review by interested parties are all part of the procedure for adoption of regulations (Gov. Code, § 11346 et seq.). The OAL also must review regulations to determine necessity, authenticity, clarity, consistency and reference (Gov. Code, § 11349.1). Even if promulgation of these regulations were to be deemed an emergency, the Department argues, the OAL must still approve them (Gov. Code, § 11349.6(a)).

There is nothing in the record by way of materials that would support the Department's position that the unreasonableness of the 30-day period was argued to the court below. The record does show that at one time appellant had started implementation, and it may have been this evidence that satisfied the court that only 30 days more was necessary. Obviously, the May 13, 1985 date is now an impossibility. We are affirming the action taken by the court, but recognize that a new and more realistic date must be set by the court. We are, therefore, remanding to the court with direction to set a new day for promulgation of the necessary regulations. The Department then may raise the issue regarding the time limitation, enabling the trial court to determine a feasible implementation date.

The judgment is affirmed, but the writ is remanded for court action in conformance with this opinion. CAHF's request for sanctions is denied.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied April 15, 1986.