[No. D007649. Fourth Dist., Div. One. Apr. 11, 1989.]

JOHN NEWLAND et al., Plaintiffs and Appellants, v.
KENNETH KIZER, as Director, etc., et al., Defendants and
Respondents.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■

## COUNSEL

Rosemary Bishop and Anson B. Levitan for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Anne S. Pressman and Richard J. Magasin, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—Plaintiffs John Newland et al. appeal judgment dismissing on the ground of no justiciable controversy their action for injunction, declaratory relief and mandate against defendants State of California Department of Health Services (Department) and its director Kenneth Kizer (together the State defendants). We affirm with respect to plaintiffs' claims involving Health and Safety Code[1] section 1336. With respect to plaintiffs' claims involving section 1335, we reverse with directions to the superior court.

I

On September 3, 1986, plaintiffs filed a class action complaint against the State defendants, Vista Golden Age Leisure Home, Inc. (Vista Golden Age), its administrator Marshall Horsman and its owner Jack Grossman.[2] On July 24, 1987, plaintiffs filed an amended complaint against the State defendants.[3]

Plaintiffs' amended complaint generally alleges: Plaintiffs are Medi-Cal recipients residing in the Vista Golden Age nursing home. Based on their status as Medi-Cal recipients, plaintiffs were threatened with eviction on September 7, 1986. On August 7, 1986, Vista Golden Age gave plaintiffs notice the home was losing its Medi-Cal funding and they would have to move within 30 days. The federal Health Care Financing Administration

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

[2] On October 3, 1986, the superior court filed an order denying plaintiffs' motion for preliminary injunction.

[3] Vista Golden Age, Horsman and Grossman are not parties to this appeal.

(HCFA) decertified the home from the Medi-Care program because of care quality standards violations. Upon Medi-Care decertification, the state was required to terminate the home's Medi-Cal certification. The home thus lost eligibility to receive Medi-Cal funding. Loss of Medi-Cal certification did not affect the home's license. The home could continue to operate until the state revoked its license. Plaintiffs were unable to locate any other San Diego skilled nursing facility (SNF) willing to accept them. Vista Golden Age refused to allow plaintiffs to stay at the home until they could find new homes near their families. After September 7, 1986, plaintiffs would be voluntarily transferred to homes out of county. Such precipitous transfers would likely result in transfer trauma and perhaps death. The Department had the legal duty to prevent transfer trauma by requiring Vista Golden Home to give its Medi-Cal residents an additional 60 days to locate new homes, seeking appointment of a receiver to manage the home in the residents' interests, and locating available beds in nearby homes.

The amended complaint specifically directs several causes of action against the State defendants. Two of those causes of action are at issue on this appeal.

In their third cause of action seeking declaratory relief, plaintiffs allege the State defendants did not agree to a 60-day extension under section 1336 for plaintiffs to stay in the home pending arrangement of safe transfers. A ninth cause of action seeking mandate alleges the State defendants have not complied with their duty under section 1335 to adopt regulations to administer the statutes authorizing state application for a court-ordered receivership for temporary management of a long-term health care facility.

## II

In September 1987 plaintiffs filed a motion for summary judgment. Plaintiffs requested the court to declare the State defendants' duties under section 1336. Plaintiffs also asked the court to mandate the State defendants to publish regulations under sections 1335 and 1336.[4]

In October 1987 the State defendants filed a motion for summary judgment. The State defendants contended they had discretion to determine whether to adopt regulations and thus neither declaratory nor mandamus relief was available to plaintiffs. The State defendants also contended section 1336's time provisions did not apply to decertified facilities.

In December 1987 the parties' summary judgment motions came on for hearing. Plaintiffs stated they were seeking declaratory relief as to the

---

[4] Plaintiffs' appellate brief does not discuss issuance of regulations under section 1336.

meaning of section 1336 and mandate directing the State defendants to issue regulations implementing the receivership provisions of section 1325 et seq. Plaintiffs conceded it was undisputed the home's Medi-Cal status had been reinstated. The court declined to adjudicate the parties' motions. Citing *Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657 [118 Cal.Rptr. 100], the court stated the case was moot and dismissed the action for lack of justiciable controversy. Plaintiffs appeal.

## III

### DEFENDANTS MUST ADOPT REGULATIONS UNDER SECTION 1335

Plaintiffs contend the superior court should have issued mandate directing defendants to issue regulations under section 1335 to implement section 1325 et seq. regarding temporary operation of long-term health care facilities. The State defendants contend mandate was inappropriate because there was no continuing controversy after the home's Medi-Cal status was reinstated. The State defendants also contend a writ compelling publication of administrative regulations would constitute improper judicial interference in the Department's exercise of its discretion. Plaintiffs respond the State defendants have a mandatory statutory duty to publish regulations and mandate is appropriate to enforce such duty. We agree with plaintiffs and reverse this portion of the judgment.

Sections 1325 through 1335 constitute article 8 of chapter 2 of division 2 of the Health and Safety Code (article 8). Article 8 is entitled "Management of Long-Term Health Care Facilities." Article 8 establishes a system permitting the Department to apply for a court order appointing a receiver to operate temporarily a long-term health care facility. (§ 1325.) Section 1325 states in enacting article 8, the Legislature intended to provide an alternative to avoid the transfer trauma accompanying abrupt involuntary transfer of frail elderly patients from one nursing home to another. Section 1335 provides in relevant part: "The state department shall adopt regulations for the administration of this article."

Under Code of Civil Procedure section 1085, the court may issue mandate "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ." Code of Civil Procedure section 1086 provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."

A

PLAINTIFFS' STANDING

Initially, we find plaintiffs have standing to bring this action under section 1335. Where, as here, the question in a mandate proceeding is one of public right and the object is to procure enforcement of a public duty, a plaintiff need not show any legal or special interest in the result. Instead, it is sufficient the plaintiff is interested as a citizen in having the laws executed and the public duty enforced. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; *Madera Community Hospital* v. *County of Madera* (1984) 155 Cal.App.3d 136, 143 [201 Cal.Rptr. 768]; *American Friends Service Committee* v. *Procunier* (1973) 33 Cal.App.3d 252, 256 [109 Cal.Rptr. 22]; *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807, 811 [74 Cal.Rptr. 358].)

In *American Friends Service Committee* v. *Procunier, supra,* 33 Cal.App.3d 252, the appellate court held several nonprofit corporations and a citizen taxpayer had standing to maintain a mandate proceeding to compel the Department of Corrections and Adult Authority to comply with the Administrative Procedure Act (Gov. Code, § 11370 et seq.) in adopting their rules and regulations. The court noted with respect to plaintiffs' standing mandate actions differ from actions for declaratory relief: "The rule is well established that when a regulation is challenged for lack of conformity, or is invalid for some other reasons, the person so challenging must be a person who himself is subject to the regulation or affected by it. [Citations.] [¶] The foregoing contention, however, has no bearing on the matter before us, for this is not a case for declaratory relief . . . . Rather, it is a petition for mandate alleging that a government department is not complying with the law and seeking a court order compelling such compliance. [¶] Petitioner in a mandamus proceeding must demonstrate that the writ is necessary to enforce or protect a specific legal right that is clear, present, certain and substantial. [Citations.] Where, however, the question is one of public, as opposed to private, interest, and petitioner seeks performance of a public duty, it is said the foregoing requirements of petitioner's rights and respondent's duty have been 'relaxed.' [Citations.]" (*Id.* at pp. 255-256.)

In *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54 [13 Cal.Rptr. 663, 362 P.2d 487], the superior court issued mandate directing the defendant department to refer agricultural workers to petitioner DiGiorgio's fruit ranches during strike conditions. The Supreme Court held although the harvest season had ended the appeal should not be dismissed: "No purpose but delay would be served by dismissing the appeals, and the public interest both in the operation of the employment service and in the

orderly administration of justice compels a determination now . . . ." (*Id.* at p. 58.)

 Thus, the fact plaintiffs here may not presently need a receiver appointed for the home does not preclude them from having the requisite standing to maintain their mandate action seeking issuance of regulations under section 1335.[5]

## B

### MANDATE IS APPROPRIATE

 The State defendants contend section 1335 involves discretionary duties and issuance of mandate would invade their administrative powers by compelling exercise of their discretion in a particular manner. They also cite section 1275 which provides in part: "The state department shall adopt, amend, or repeal . . . such reasonable rules and regulations as may be necessary or proper to carry out the purposes and intent of this chapter [§§ 1250-1339] and to enable the state department to exercise the powers and perform the duties conferred upon it by this chapter . . . ." However, section 1335 specifically requires the Department to adopt regulations. Section 1335's specific mandatory language prevails over any more general language in section 1275. (Code Civ. Proc., § 1859; Civ. Code, § 3534; *Neumarkel* v. *Allard* (1985) 163 Cal.App.3d 457, 461-462 [209 Cal.Rptr. 616]; *Markley* v. *City Council* (1982) 131 Cal.App.3d 656, 668 [182 Cal.Rptr. 659]; *Sheets* v. *Cleveland* (1942) 51 Cal.App.2d 148, 150 [124 P.2d 200].)

 Mandate is an appropriate remedy to compel administrative agencies to issue regulations. In *Madera Community Hospital* v. *County of Madera, supra,* 155 Cal.App.3d 136, the court issued mandate directing the county to adopt standards for medical aid and care of the indigent and poor as required under Welfare and Institutions Code sections 17000 and 17001. In *Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 554 [216 Cal.Rptr. 367, 702 P.2d 525], the court issued mandate ordering the State Bar to reformulate rules governing administration of the client security fund under Business and Professions Code section 6140.5.

---

[5] While the superior court dismissed both causes of action on the ground of lack of justiciability, we note the respondents' brief filed by the State defendants does not argue plaintiffs' mandate claim is nonjusticiable. Instead, the State defendants mount the substantive attacks we discuss *infra.* As we have noted, plaintiffs have standing to maintain their mandate claim. Manifestly, once plaintiffs have established the requisite standing to proceed in mandate here, the issue becomes justiciable.

In section 16's definitions of "shall" as mandatory and "may" as permissive, we find support for construing section 1335 as imposing a mandatory duty on the Department to adopt regulations. In *California Assn. of Health Facilities* v. *Kizer* (1986) 178 Cal.App.3d 1109 [224 Cal.Rptr. 247], the appellate court held mandate was proper to compel the Department of Health Services to issue regulations establishing a subacute care program in health facilities under Welfare and Institutions Code section 14132.25. In interpreting the applicable statutory language the court stated: "Here the words of the statute, '[T]he State Department of Health *shall establish* . . . .' (italics added), are clear. Moreover, Welfare and Institutions Code section 15, one of the general provisions governing interpretation of specific Welfare and Institutions Code sections, explicitly declares, ' "Shall" is mandatory and "may" is permissive.' The express language of this statute and the guidelines of section 15 require a finding that the duty imposed on the Department is mandatory in nature." (*Id.* at pp. 1113-1114.)

Supporting their contention mandate would improperly invade their administrative discretion, the State defendants cite *Sklar* v. *Franchise Tax Board* (1986) 185 Cal.App.3d 616 [230 Cal.Rptr. 42]. In *Sklar* plaintiffs petitioned on behalf of state taxpayers for mandate compelling the Board to adopt specific procedures controlling the use of alcohol entertainment expense as a business deduction on state income returns. The appellate court affirmed the sustaining of a demurrer to the petition. The court stated even if the Board had a mandatory duty to prescribe rules and regulations, mandate would not lie because the plaintiffs in effect sought an order compelling the Board to exercise its direction in a particular manner to reach a particular result. (*Id.* at pp. 625-626.)

The State defendants' reliance on *Sklar* v. *Franchise Tax Board, supra,* 185 Cal.App.3d 616, is unavailing. In *Sklar* the plaintiffs essentially asked the court to direct the Board to adopt "regulations embodying the precise substance and content plaintiffs desire." (*Id.* at p. 626.) Unlike the situation in *Sklar,* plaintiffs here are not seeking regulations with specific content they desire. Instead, plaintiffs merely seek mandate directing the Department to adopt regulations in accord with its mandatory statutory duty. Court mandate simply to issue regulations does not prescribe the substance and content of such regulations or otherwise compel the Department to exercise its administrative discretion in any particular manner. (See *Betancourt* v. *Workmen's Comp. App. Bd.* (1971) 16 Cal.App.3d 408, 413 [94 Cal.Rptr. 9].)[6]

---

[6] In *Estate of Smith* v. *Heckler* (10th Cir. 1984) 747 F.2d 583, the appellate court held mandate was appropriate where a class action was brought on behalf of Medicaid recipients in nursing homes against the Secretary of Health and Human Services. The plaintiffs alleged the secretary had a statutory duty under title XIX of the Social Security Act to develop and

The State defendants' contention section 1275's general discretionary language should apply here would nullify the more specific mandatory language of section 1335. The Legislature has specifically determined the Department is to adopt regulations to administer article 8. (§ 1335.) ██ "[I]n the final analysis it is the intent of the Legislature that determines the meaning to be given. [Citations.]" (*California State Psychological Assn. v. County of San Diego* (1983) 148 Cal.App.3d 849, 859 [198 Cal.Rptr. 1].) ██ Construing section 1335 to be other than mandatory would defeat the very purpose of its enactment.

The superior court should have granted mandate directing the State defendants to adopt regulations under section 1335. Upon remand the court shall take evidence on the issue of the amount of time reasonably necessary to issue such regulations and issue mandate accordingly. (See *British Airways* v. *Port Authority of New York, Etc.* (2d Cir. 1977) 564 F.2d 1002.)

IV

### PLAINTIFFS' SECTION 1336 CLAIM IS NONJUSTICIABLE

Section 1336 provides: "Notwithstanding any other provisions of law, a long-term health care facility shall give written notice to the affected patients or to the guardians of the affected patients at least 30 days prior to any change in the status of the license or in the operation of the facility resulting in the inability of the facility to care for its patients.

"If patients' placement problems are encountered which cannot be satisfactorily resolved within this 30-day period, the State Department of Health Services and the health facility shall agree on an extension which shall not exceed an additional 60 days.

"The facility shall provide an appropriate team of professional staff to assist patients and families in obtaining alternative placement.

"This section shall not apply to actions initiated by the department to suspend or revoke the license."

██ Plaintiffs seek a declaration of section 1336's meaning. They contend the superior court should have ordered the Department to extend

---

implement a system of nursing home review and enforcement designed to ensure patients received optimal medical and psychosocial care under the act. The appellate court stated mandate was proper: "This is not a question of controlling the Secretary's discretion because the Secretary has failed to discharge her statutory duty altogether. Thus, the court should 'compel performance and thus effectuate the congressional purpose,' behind the statutory scheme. [Citation.]" (*Id.* at p. 591.)

section 1336's 30-day notice period by an additional 60 days in cases of Medi-Cal decertifications. The State defendants contend the court properly found any dispute about section 1336's applicability ended when the home received Medi-Cal recertification. On this record the superior court properly found the issue of section 1336's meaning was nonjusticiable.

■ "Any person . . . who desires a declaration of his rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action in the superior court . . . ." (Code Civ. Proc., § 1060.) Thus, declaratory relief is appropriate only where there is an actual controversy, not simply an abstract or academic dispute. (*Hagan* v. *Fairfield* (1965) 238 Cal.App.2d 197 [47 Cal.Rptr. 600]; *Morris* v. *Cole* (1933) 218 Cal. 676 [24 P.2d 785].) For purposes of declaratory relief, an "actual controversy" is one which ". . . 'admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do.' [Citations.]" (*Winter* v. *Gnaizda* (1979) 90 Cal.App.3d 750, 755 [152 Cal.Rptr. 700].)

In *Zetterberg* v. *State Dept. of Public Health, supra,* 43 Cal.App.3d 657, the appellate court affirmed summary judgment for defendants on the ground declaratory relief was improper in a taxpayers' suit seeking a declaration of the Department's powers and duties to act under certain air pollution statutes. The court stated: "The fact that an issue raised in an action for declaratory relief is of broad general interest is not grounds for the courts to grant such relief in the absence of a true justiciable controversy. [Citations.]" (*Id.* at p. 662.) At page 663, the court quoted the United States Supreme Court's language in the consolidated cases of *Commonwealth of Massachusetts* v. *Mellon* and *Frothingham* v. *Mellon* (1923) 262 U.S. 447, 488 [67 L.Ed. 1078, 1085, 43 S.Ct. 597]: "The party who invokes the power [of judicial review] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."
■ Once the home's Medi-Cal status was reinstated, plaintiffs no longer needed extension of the notice period under section 1336. Thus, recertification rendered moot plaintiffs' cause of action for declaratory relief about section 1336's meaning.

Further, to the extent plaintiffs seek a declaration concerning section 1336's meaning and applicability in a possible future dispute between the parties, such action is not ripe. ■ "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently

congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618], fn. omitted, cited with approval in *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 171 [188 Cal.Rptr. 104, 655 P.2d 306].) ■ The basic rationale of the ripeness doctrine ". . . is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (*Abbott Laboratories* v. *Gardner* (1967) 387 U.S. 136, 148-149 [18 L.Ed.2d 681, 691, 87 S.Ct. 1507].)

■ Although the parties' interests may be adverse and the briefs may address substantive issues involving section 1336, "plaintiffs' posture lacks the urgency and definiteness necessary to render declaratory relief appropriate." (*Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d at p. 172.) Nothing in the record suggests plaintiffs are now imminently faced with any change in the status of the home's license or operations threatening the facility's ability to care for its patients. Absent any need for court determination of section 1336's applicability in a specific factual scenario in an actual dispute, issues involving interpretation of the statute's meaning are not appropriate for immediate judicial resolution. (*Id.* at pp. 172-173.)

At one time plaintiffs may have been threatened with transfer from the home. Although we may sympathize with plaintiffs' difficulties encountered at that time and their fears of future adverse changes in the home's license status or operations, Medi-Cal recertification of the facility has rendered nonjusticiable their declaratory relief action about section 1336's meaning. ■ "A difference of opinion as to the interpretation of a statute as between a citizen and a governmental agency does not give rise to a justiciable controversy [citations] and provides no compelling reason for a court to attempt to direct the manner by which the agency shall administer the law. [Citations.]" (*Zetterberg* v. *State Dept. of Public Health, supra,* 43 Cal.App.3d at pp. 663-664.)

■ The superior court properly found to be nonjusticiable plaintiffs' action with respect to section 1336.

DISPOSITION

The portion of the judgment denying plaintiffs mandate on their claim under Health and Safety Code section 1335 is reversed. The superior court

is directed to hold further proceedings and issue the writ of mandate in accord with this opinion. The remainder of the judgment is affirmed. Plaintiffs shall have costs on appeal.

Todd, J., and Froehlich, J., concurred.